Henry Masonholder, Appellant, v. William O'Toole et al., Appellees.

**MOTOR VEHICLES:** Operation—Negligence Per Se. Negligence *per se* is revealed in the act of the driver of an automobile in approaching and entering an obscured public crossing (with which he was familiar) with knowledge that another vehicle was also rapidly and immediately approaching said intersection from his right, and failing either (1) to sound his horn or (2) to yield the right of way. (See Book of Anno., Vol. 1, Sec. 5028 *et seq.*)

Headnote 1: 29 C. J. p. 653.

Headnote 1: 2 R. C. L. 1193, 1194.

*Appeal from Muscatine District Court.*—William W. Scott, Judge.

NOVEMBER 16, 1926.

REHEARING DENIED APRIL 7, 1927.

Suit for damages growing out of an automobile accident. From a directed verdict in favor of defendant plaintiff appeals. —*Affirmed*.

*Nichols, Tipton & Tipton,* for appellant.

*J. F. Devitt* and *Johnson, Donnelly & Lynch,* for appellees.

ALBERT, J.—A short distance south of the town of Letts, in Muscatine County, is a highway intersection, a road running north from Letts intersecting at approximately right angles an east and west road, the latter being known as the "White Way," and the north and south road being referred to in the record as the "Letts Road." On the 17th day of April, 1923, appellant approached this intersection from the west in his Buick automobile. In the car with him were three women, the car being driven by appellant. The O'Toole car approached this intersection on the Letts Road, traveling in a northerly direction. The graded part of these roads was about 30 feet in width. The Letts road, being a well traveled road, had been dragged. The White Way, plaintiff says, was rough, and not in very good condition.

Counsel make some contention as to whether or not the view of appellant to the south was obstructed as he approached this intersection, but we take it from his own testimony and from the physical facts shown by the evidence in the case that from a point some 15 rods west of this intersection to the intersection his view was obstructed. He testifies that, before he reached this point, he saw O'Toole coming from the south on the Letts Road; that he (appellant) was traveling something like 15 to 20 miles an hour; but that, as he approached this intersection, he slowed down his car, so that, by the time he reached the intersection, he was not traveling over 10 miles an hour; that he did not sound his horn or any other alarm on approaching the intersection; but that, when he reached the intersection, he saw the O'Toole car coming toward him; and

that he stepped on the gas and tried to cross ahead of the O'Toole car. He locates this point by saying, in substance, that, if the fences on the west side of the Letts Road had been extended across the road, what would be east of the line so made was the intersection he refers to; and further says that, when he had gotten his car from 5 to 7 feet into the intersection, he saw the O'Toole car about 16 feet from the intersection, running 25 to 30 miles an hour, the O'Toole car being on the east side of the north and south highway; but he claims that the O'Toole car angled across the Letts Road at appellant, and caught his car at the center of the road running north and south.

The physical facts in the case, however, hardly sustain this contention of appellant's, because appellant's car, a photograph of which is in evidence, shows that it was struck almost squarely on the right-hand side thereof, leaving impressions on the car of both of the headlight frames of the O'Toole car.

Appellant had been familiar with this intersection for a long time, having lived in this vicinity for a great many years, and was a frequent traveler over the same, both north and south and east and west. He finally says that, as he was approaching this intersection, and was about 12 rods west thereof, he saw the O'Toole car, and that he (O'Toole) was coming pretty fast. From that point to the intersection he did not look to see if he could see O'Toole again, and says:

"I do not know as I looked to see if I could see him again. I didn't try to keep any track of O'Toole after I first saw him in the road. I didn't make any calculations whether he or I would clear first. I continued my way as I saw fit, not paying any particular attention."

This is a sufficient statement of the facts to cover the questions involved herein.

A motion to direct verdict for the defendant having been sustained, we turn to a consideration of the questions raised.

Section 5043, Code of 1924, provides:

"An adequate signaling device shall in all cases be sounded on approaching curves, tops of hills, and the intersecting highways in the country where the operator's view is obscured."

This statute made it the affirmative duty of appellant, in approaching this intersection, to sound his signaling device. This he failed to do.

Section 5035, Code of 1924, reads:

"Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way, provided, however, that such vehicles coming from alleys and private drives, where view is obstructed, shall stop immediately before entering a public street or highway."

Under this section, when O'Toole was approaching the intersection from the right, it was the duty of appellant to yield to O'Toole the right of way. This he failed to do, but attempted to cross the intersection ahead of O'Toole, who had the right of way over him.

Section 5028, Code of 1924, provides:

"Every person operating a motor vehicle on the public highway of this state shall drive the same in a careful and prudent manner, and at a rate of speed that will not endanger the property of another, or the life or limb of any person."

Under this section, it was the duty of appellant to drive his car in a careful and prudent manner, and at a rate of speed that would not endanger the property of another. He says that, when he reached the intersection, he had reduced the speed of his car to ten miles an hour, and if so, he could have stopped his car within a very short distance; but, instead of this, he "stepped on the gas," and tried to get across the highway ahead of O'Toole.

These sections of the statute were enacted for the protection of public travelers on the highway. Appellant seems not to have observed any of the requirements therein provided. It was his statutory duty to have his car under control, and to look to his right, and to give to any car approaching him from the right the right of way; and a failure so to do on his part was negligence. One of the grounds on which the court directed a verdict in favor of defendant was that plaintiff was guilty of contributory negligence, as a matter of law. That the failure of appellant to give a warning signal as he approached this intersection was negligence, see *Hough v. Illinois Cent. R. Co.,* 169 Iowa 224; *Clark v. Weathers,* 178 Iowa 97; *Corning v. Maynard,* 179 Iowa 1065; *Girl v. United States R. Adm.,* 194 Iowa 1382. But that this would not be conclusive upon the question of contributory negligence, see *Carlson v. Meusberger,* 200 Iowa 65.

That the driver of an automobile who fails to yield the right of way to another vehicle at an intersecting crossing, when he is under legal obligation to do so, is guilty of negligence, see *Seager v. Foster*, 185 Iowa 32. It is apparent, therefore, under the aforesaid sections of the statute, that appellant was negligent in these respects: (1) He failed to sound his alarm; (2) knowing that O'Toole was coming from the right, he failed to give him the right of way; and (3) he failed to look to his right.

No one could read this record, noting the failures of appellant to comply with these requisites of the statute, without reaching the conclusion that such failures contributed to his injury. Cases cited in which plaintiff's car had the right of way, have no application to the present case. We are quite satisfied that the minds of reasonable persons would not differ on the question as to whether or not the negligence of plaintiff shown herein contributed to his injury. Our cases are uniform in holding that, where reasonable minds would not disagree, and the evidence shows that the negligence on the part of plaintiff was a contributing cause to the injury complained of, then it is the duty of the court to act, and so hold, and to direct a verdict against the plaintiff. It is true that it is held in the *Carlson* case, supra, that, where reasonable minds might disagree as to the causal connection, it is a jury question. But we are satisfied, under the record in this case, that there is a causal connection between the injury and the negligence on the part of appellant, and that, therefore, the negligence of appellant was contributory negligence, within the meaning of the rule, which would defeat his recovery.

The ruling of the district court is right.—*Affirmed.*

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.