SAM MIDDLETON, Appellee, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, Appellant.

No. 40012.

December 13, 1929.

Rehearing Denied March 21, 1930.

*Tinley, Mitchell, Ross & Mitchell,* for appellant.

*Robertson & Robertson,* for appellee.

Grimm, J.—The petition, in substance, charges the defendant with negligence in operating the street car at a high and dangerous rate of speed, failure to give signals, failure to keep a proper lookout, failure to keep the car in proper control, and failure to stop the street car after seeing the plaintiff in a position of peril.

The record shows that, on the 4th day of

September, 1928, while the plaintiff was driving his one-ton Ford automobile truck, there was a collision between it and one of the street cars of the defendant, as a result of which the truck was damaged, and the plaintiff suffered some personal injuries. The accident occurred at the intersection of Broadway and Tenth Streets in the city of Council Bluffs, Iowa. Broadway is a main street, running east and west, and Tenth Street intersects Broadway, running north and south. Both streets are paved. The defendant maintains a double line of tracks running east and west on Broadway. Street cars traveling east use the south track, and those traveling west use the north track. This double-track railway operates between Omaha, Nebraska, and Council Bluffs, Iowa. On the southeast corner of Tenth and Broadway is a two-story building, built out to the sidewalk line on the south side of Broadway. The intersection and the streets in the immediate vicinity of the intersection are substantially level. Appellee was about 50 years of age, and had operated an automobile for approximately 15 years, and had lived in Council Bluffs four years, prior to the date of the accident, and, according to his own testimony, was familiar with the intersection of Broadway and Tenth Streets. The collision occurred about 2 o'clock in the afternoon. There was no unusual condition, such as storm or fog. It was a clear day. Nothing out of the ordinary was taking place just before or at the time of the accident. The plaintiff drove north on the east side of Tenth Street, intending to turn west on Broadway and continue west on Broadway. According to plaintiff's own story, as he approached Broadway, he brought his truck to a complete stop at the south curb line of Broadway. He says his brakes were new, and in excellent condition. As he stopped, he looked west on Broadway, and observed two automobiles traveling east, approaching the intersection; he then looked east, and saw a street car approaching said intersection, about 75 or 80 or more feet away, traveling west on the north track. Appellee says: "The street car was traveling quite fast * * * a little faster than ordinary." After observing the approaching street car, the appellee started his truck in low gear, at a rate of speed enabling him, according to his own story, to stop the truck almost instantly. After the plaintiff started the truck forward, he continued to drive the truck slow-

ly north on Broadway until his truck was on the south car track, and then started to run to the west on Broadway. After starting north across Broadway, although knowing, as he traveled from the south side of Broadway to the south track thereof, that the street car was approaching from the east on the north track, appellee did not look to see how near the street car was to him, but continued north, and started, and practically completed, the turn west. Shortly after the plaintiff thus made the turn to the west, the street car struck the right rear wheel of the truck, and a collision occurred. The truck was pushed along the rails, and afterwards overturned. The street car in question was of the large, or, as is commonly known, "interurban," type of car. There is a dispute in the evidence as to the speed at which the street car was being operated, immediately and for some time before the accident. There is also a dispute as to whether warning signals, such as the sounding of the gong, were given. The motorman testified:

"When I first saw the truck, the front wheels of the truck were over the fender on the street car. Prior to that time, the automobile had not been at any time in front of the street car. After the collision, the street car traveled approximately 15 or 20 feet, and the truck went over on its left side."

According to the plaintiff's own testimony, when he stopped near the sidewalk line on the south side of Broadway, he saw the west-bound street car coming towards the intersection "at a rate of speed that was quite fast." He then put his truck in low gear, and proceeded north across that intersection, moving slowly, with full knowledge that the street car was coming west towards and into the intersection, without looking towards the east. He testified that he could stop his Ford truck almost instantly. His brakes were new, and in excellent condition. Further, he says:

"I was driving a little east of the center of the street, and when the automobile was on the east-bound track [south track], going along at a speed of about four miles an hour, I started to turn to the west. I didn't look to see how close the street car was at this time."

All of the time he was progressing from a point near the

south sidewalk line of Broadway north to the point of the accident, he could have seen the street car approaching the crossing. There was nothing to intercept his view. He saw the street car before he started into the intersection, and, according to his own story, he thought it was coming faster than usual, and it was only about 75 or 80 feet away. Notwithstanding this knowledge on his part, and with nothing to distract his attention, and in the absence of any emergency, he deliberately drove his truck across the south track, and, as he was doing so, turned to the west immediately in front of a moving street car. He had at his command every necessary means with which to almost instantly stop his truck and avoid the collision. Under the familiar rule, it is our duty to construe the evidence in the light most favorable to the plaintiff. The plaintiff was guilty of contributory negligence, as a matter of law, and cannot recover. As has been frequently stated, each of the cases of this class rests largely upon the peculiar facts in the particular case, and an exhaustive discussion is of little value to either trial bench or bar. The rules of law applicable have been frequently stated. We will only refer, very briefly, to a few. In a recent case, *Barboe v. Sioux City Serv. Co.*, 205 Iowa 1074, this court reaffirmed the doctrine announced in *Dow v. Des Moines City R. Co.*, 148 Iowa 429, as follows:

"We have never held that one may go heedlessly and blindly upon a street-car or other track and still be free from contributory negligence."

The plaintiff's own story of this accident cannot be otherwise characterized than "going blindly upon a street car track." Not only that, but he went upon the track without looking to see how close the car was to him, when he had *positive knowledge* that the car was rapidly approaching the track which he was about to cross. This court also said, in *Barboe v. Sioux City Serv. Co.*, supra:

" 'To go upon the track of either a steam or street railway without exercising any care for his safety is negligence, and such negligence will prevent a recovery.' "

The plaintiff not only failed to show that he was free from contributory negligence, but his own testimony clearly shows

that he was guilty of contributory negligence, and cannot recover. On this subject, see *Tesdell v. Des Moines City R. Co.*, 197 Iowa 563; *Sandell v. Des Moines City R. Co.*, 184 Iowa 525; *Yetter v. Cedar Rapids & M. C. R. Co.*, 182 Iowa 1241.

The undisputed evidence in this case shows that, after the motorman who was in charge of the car discovered plaintiff's peril, which was when the front wheels of the truck were over the street car front fender, he did everything he could do to prevent the collision, and therefore the doctrine of the "last clear chance" is not involved. On account of the contributory negligence of the plaintiff, the trial court should have directed a verdict for the defendant.