DAISY VAN GORDEN, Administratrix, Appellant, v. CITY OF FORT DODGE, IOWA, et al., Appellees.

No. 41383.

210

DECEMBER 13, 1932.

REHEARING DENIED MAY 15, 1933.

D. M. Kelleher and Richard F. Mitchell, for appellant.

Price & Burnquist, and Carr, Cox, Evans & Riley, for appellee Railway Company.

M. J. Mitchell, for appellee City.

KINDIG, J.—This suit at law was commenced by the plaintiff-appellant, Daisy Van Gorden, as the administratrix of the Harry Van Gorden estate, to recover, for the intestate's alleged wrongful death, damages from the defendants-appellees, the city of Ft. Dodge, Iowa, and the Chicago, Great Western Railway Company. The intestate, Harry Van Gorden, was killed at Ft. Dodge, Iowa, on March 9, 1930, between 10:30 and 11 o'clock p. m., when he drove the automobile in which he was riding against a railroad traffic signal located substantially in the center of Fifth Avenue South, near the east city limits.

Harry Van Gorden, the intestate, during his lifetime, was employed in the insurance business. Such employment required him to travel over his allotted territory in an automobile. Upon the night in question, Van Gorden was traveling from Des Moines to his home at Emmetsburg, by way of Ft. Dodge. He approached Ft. Dodge from the east over highway No. 20. Highway No. 20 is an east and west arterial highway, extending across the entire state through the city of Ft. Dodge. At Ft. Dodge, highway No. 20 from the east extends through the eastern part of the city over Fifth Avenue South. Immediately and for some distance east of Ft. Dodge highway No. 20 is paved. That pavement is 18 feet wide. As before explained, the 18-foot paved roadway on highway No. 20 connects at the east city limits of Ft. Dodge with Fifth Avenue South, extending in an east and west direction in that city. Fifth Avenue South is a paved thoroughfare 26 feet 6 inches wide on the traveled portion thereof. Two sets of railroad tracks cross Fifth Avenue South in a northwesterly and southeasterly direction immediately west of the railroad traffic signal against which the appellant's intestate drove his automobile. The west set of these railroad tracks belongs to the Ft. Dodge, Des Moines & Southern Railway Company; while the east set thereof is owned by the appellee Chicago, Great Western Railway Company. When driving westerly from highway No. 20 on the east side of Ft. Dodge over Fifth Avenue South connecting therewith, as before explained, the first railroad track approached in said city is that of the appellee Chicago, Great Western Railway Company.

In June, 1928, the appellee city of Ft. Dodge, by resolution, authorized the appellee Great Western Railway Company to erect and maintain the aforesaid railroad traffic signal at the point in question. This signal is located on Fifth Avenue South immediately east of the appellee Great Western Railway Company's tracks at a point 132 feet west from the place where highway No. 20 enters the east limits of Ft. Dodge. Such traffic signal has a concrete base or pedestal 3 feet 10 inches wide from north to south, and five feet long from east to west. It appears that the concrete base is about 2 feet high. Placed upon the concrete base is an iron pole several feet long. On top of the iron pole is an electric bell. Beneath the electric bell are cross-arms similar to those usually appearing at a railway crossing. Painted on these cross-arms are the words "railroad crossing". Below the cross-arms are two red lights which flash alternately

when a train approaches. One of these lights is located on each side of the pole. Underneath those alternate lights, and above the concrete base before mentioned, are two small amber lights. These amber lights are arranged, as are the alternate lights, with one on each side of the pole. There is a clearance of 11 feet 5 inches on each side of the signal device. In order to assist the reader, there is inserted at this place a photograph of the railroad traffic signal. The photograph shows the signal when the observer is looking west.

When this photograph was taken, the camera stood 13 feet east of the signal.

For the purposes of identification, the amber lights above described are marked on the photograph as A and B. Extending south from Fifth Avenue South is Twenty-second street, located, as shown in the photograph, several feet west of the appellee Chicago, Great Western tracks near the Ft. Dodge, Des Moines & Southern Railway tracks. West of the traffic signal in question, near the Ft. Dodge, Des Moines & Southern Railway Company's tracks, is another signal device of the same character. Above the signal device against which appellant's intestate drove his car and a little west thereof is a city arc light. A short distance to the west of the aforesaid arc light there is another city arc light on Fifth Avenue South. Those lights were described by a witness as being "regular arc city lights". There is here inserted, for the convenience of the reader, a photograph showing a view looking westward over a part of highway No. 20 and Fifth Avenue South:

This photograph reveals the two railroad traffic signals and the arc lights above them.

It is argued by the appellant that the railroad traffic signal against which her intestate drove his car constituted a nuisance under the circumstances, and therefore the appellees are liable to her in damages for the aforesaid wrongful death. She contends under this argument that the appellee city of Ft. Dodge is thus liable to her for permitting the nuisance, and the appellee Chicago, Great Western Railway Company for maintaining it.

Many propositions are raised by the appellant in her argument. Therein she contends, among other things, that the appellee city of Ft. Dodge did not authorize the installation and maintenance of the railroad traffic signal by an ordinance. Likewise the appellant urges that the state highway commission did not authorize the installation or maintenance of the traffic signal. On the other hand, it is the theory of the appellee Chicago, Great Western Railway Company that the city authorized the installation and maintenance of the traffic signal by resolution, and that under the circumstances the sanction of the state highway commission was not required. We find it unnecessary to decide these controversies.

For the purposes of this discussion only, it is assumed without deciding that the appellee city of Ft. Dodge was negligent in permitting, and the appellee Chicago, Great Western Railway Company was negligent in erecting and maintaining, the traffic signal under the circumstances. At the close of the appellant's testimony, the district court sustained the appellees' motion for a directed verdict. That motion contained many grounds. Among the grounds contained in the motion is the one that the appellant's intestate at the time in question was guilty of contributory negligence which contributed to his accident, injury, and death. The motion was sustained generally. Therefore, among the grounds upon which the district court sustained the motion for a directed verdict is the one that the appellant's intestate was guilty of contributory negligence. Our discussion, then, will be confined to that proposition and certain rulings on evidence.

I. It will be convenient to consider the negligence of appellant's intestate by first eliminating the question relating to the presumption that the deceased exercised due care. At a later time that presumption will be given due consideration.

As shown by the record, the appellant's intestate was 38 years of age when the accident occurred. He was an experienced automobile

driver. Daisy Van Gorden, the appellant administratrix was the wife of Harry Van Gorden. On many occasions, the appellant and the intestate had driven together over arterial highway No. 20 westward into and through Ft. Dodge. When the appellant's intestate approached and entered Ft. Dodge over Fifth Avenue South on the night in question, the two city arc lights were burning brightly. Likewise, as appellant's intestate approached the pedestal against which he drove his car, the two amber lights thereon were burning. The car which appellant's intestate was driving struck the traffic signal squarely head-on. After the accident, one front wheel of the car was on the south side of the traffic signal and the other was on the north side thereof. These wheels remained on the front axle although the car was jammed against the signal device.

No one was present at the moment the accident occurred. Under the record, it is manifest, however, that the appellant's intestate drove astraddle the center line of the street. Thus it appears that he did not keep his entire vehicle on the north side thereof. About one mile east of Ft. Dodge, the appellant's intestate, driving westward, passed the witness Ruth Muller, who, with a companion, was riding in another automobile going in the same direction. Although the appellant's intestate drove beyond the vision of the witness Ruth Muller in her course toward Ft. Dodge, she and her companion came upon the scene of the accident a very short time after it occurred. In fact, this witness came upon the scene so shortly after the accident that she first saw the smoke, before the flames, coming out of the car driven by appellant's intestate as it stood squarely against the east side of the traffic signal before named. Soon thereafter, the witness saw flames burst forth. Then her companion removed the appellant's intestate from the burning car. This witness and her companion were the first to come upon the scene of the accident. Manifestly it appears without doubt that the appellant's intestate, an experienced driver, drove the automobile westward over highway No. 20 onto Fifth Avenue South directly against the signal device. The distance thus covered by appellant's intestate on Fifth Avenue South was only 132 feet from highway No. 20.

There is no evidence in the record to indicate that another car or any other vehicle interfered in any way with Van Gorden's driving. Ruth Muller, the witness above mentioned, testified that, after Van Gorden passed the car in which she was riding about a mile east of Ft. Dodge, no other vehicle of any kind met or passed her. An

excuse is offered to explain why Van Gorden did not see the signal device when its amber lights were burning and the city arc lights above were illuminating the street. The alleged excuse, however, in fact did not amount to a valid reason when considered with the entire record.

A witness Fuller suggested that the amber lights were dim and the city arc lights overhead, mingling with the lights of an approaching automobile, tended to confuse the driver and obscure parts of the signal device. Painted on both the pedestal and the pole of the signal device are black and white diagonal stripes. Fuller, the witness, did not say that an approaching automobile driver, under the conditions above described, could not see any part of the signal device. He did say, however, that under certain conditions it is "hard" to see the amber lights, the alternating red lights when they are not burning, and the cross-arms. At another place in his testimony this witness suggested that it was "pretty hard sometimes" to see the entire signal device. When the witness's testimony is carefully considered, however, it is evident he failed to say that even under the conditions described some part of the signal device could not easily be seen at all times by an automobile driver approaching from the east. Also the witness admitted that all parts of the signal device could be seen at night with the alleged confusing lights. The witness interposed the reservation, however, that sometimes it was "hard" to see the aforesaid amber lights, the red signal lights when not burning, and the cross-arms. Moreover, this witness did not attempt to describe the condition of the signal and the lights at the exact time when Van Gorden drove into the structure. His testimony had relation to the general, as distinguished from the exact, condition at the time in question. According to the record, the amber lights were burning on the signal device when the accident occurred, and the two city arc lights above brightly illuminated the entire territory. The witness Ruth Muller, before mentioned, testified that immediately after the accident she and her companion drove their automobile a little back and to the right of Van Gorden's car, which was standing against the signal device. Ruth Muller stayed in her car while her companion assisted Van Gorden. While thus in her car, Miss Muller could see "everything" around there on the street. She could do this, according to her testimony, because of the city arc lights. This witness was there on the scene and described the exact condition at the time of the accident. Manifestly an ordinarily

prudent man, driving an automobile westward by way of highway No. 20 into Ft. Dodge over Fifth Avenue South at the time of Van Gorden's accident, could have seen the signal device in time to have avoided it had he used ordinary care.

Contributory negligence, under the circumstances, will defeat recovery, and the burden rests upon the appellant to show that her intestate was free from such negligence. In re Estate of Hill, 202 Iowa 1038 (local citation 1044), 208 N. W. 334, 210 N. W. 241. Considering here the physical facts and the other facts and circumstances surrounding this accident, it is apparent that reasonable minds cannot differ on the question of Van Gorden's contributory negligence. Where, as in the case at bar, the facts are clear and undisputed and the existence and effect of Van Gorden's contributory negligence is sufficiently apparent to fair-minded and reasonable men so that but one conclusion may fairly be drawn therefrom, then the trial court may and should direct a verdict in the appellees' favor because thereof. Perkins v. Schmit Construction Company, 215 Iowa 350, 245 N. W. 343; Murphy v. Iowa Electric Company, 206 Iowa 567, 220 N. W. 360; Barboe v. Sioux City Service Company, 205 Iowa 1074, 215 N. W. 740; Rosenberg v. Des Moines Railway Company, 213 Iowa 152, 238 N. W. 703; Wasson v. Illinois Central Railway Company, 203 Iowa 705, 213 N. W. 388; Masonholder v. O'Toole, 203 Iowa 884, 210 N. W. 778; and other cases therein cited. See Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953.

Van Gorden, as before said, drove over highway No. 20 westward onto Fifth Avenue South in Ft. Dodge, with his vehicle partly on the north and partly on the south side of the center line of the street, until he came in contact with the stationary pedestal which he could have seen in the lighted condition before described in time to have avoided it had he used the care of an ordinarily prudent man. There was a clearance of 11 feet 5 inches on each side of the lighted pedestal, as before explained. That was ample room in which Van Gorden, under the circumstances, could have operated his car safely past the visible signal device.

Consequently there remains for discussion the question whether the presumption above named alters the situation.

■■■ II. As before explained, there were no eyewitnesses to the accident, although the witness Ruth Muller and her companion came upon the scene soon after the accident. Because there were no eye-

witnesses, the appellant contends that she is entitled to the presumption that her intestate exercised due care at the time in question. See Gray v. Chicago, R. I. & P. Railway Company, 143 Iowa 268, 121 N. W. 1097; Bettinger, Adm'r v. Loring et al., 168 Iowa 103, 150 N. W. 31. It was said in the Bettinger case, just cited, reading on page 113 of 168 Iowa, 150 N. W. 31, 35:

"The question is not whether he [the intestate] did or did not observe any specific act of care or caution, but whether he did what a fairly prudent person ought to have done under the circumstances; and, in the absence of eyewitnesses of circumstances indubitably indicating the contrary, he is presumed to have done whatever reasonable care required at his hands."

But, as said in Oaks v. Chicago, Rock Island & Pacific R. Co., 174 Iowa 648, reading on page 659, 156 N. W. 740, 744:

"There is a limitation to the rule [allowing the presumption of care] that where the physical facts show that care could not have been exercised the presumption does not obtain."

This court, notwithstanding the rule allowing the presumption of due care under certain circumstances, has frequently sustained a directed verdict for the defendant, where the physical facts show that the intestate was guilty of contributory negligence. Oaks v. Chicago, R. I. & P. R. Co., (174 Iowa 648, 156 N. W. 740), supra; Sohl v. Chicago, Rock Island & Pacific R. Co., 183 Iowa 616, 167 N. W. 529; Wasson v. Illinois Central Railway Co., (203 Iowa 705, 213 N. W. 388), supra; Tegtmeyer v. Byram, 204 Iowa 1169, 216 N. W. 613; Brown v. McAdoo, 195 Iowa 286, 188 N. W. 7.

The appellant's argument relating to the presumption aforesaid raises mere unfounded conjectures. She argues that the intestate's attention may have been temporarily diverted at the crossing while he was looking for trains, that the intestate may have been temporarily blinded by lights from an automobile approaching from the west before it turned south on Twenty-second street near the railroad tracks, as before explained, or that a passing car may have crowded the intestate over to the center of the street without affording him an opportunity to avoid the signal device. There is no evidence, of course, that any of these surmises indicate the truth. On the other hand, it appears from the evidence, the physical facts, and the surrounding circumstances that none of those conjectures does indicate the truth.

As already stated, the appellant's intestate drove westward on highway 20 to the city limits. From there he continued westward over Fifth Avenue South a distance of only 132 feet until the signal device was reached. It is quite obvious that no vehicles passed the appellant's intestate before he reached the signal device, because Ruth Muller and her companion, who were following the former down highway No. 20, neither met nor passed such car. If a car from the opposite direction had passed appellant's intestate on Fifth Avenue South, it would have legally traveled on the south side of the street. Therefore such supposed vehicle traveling on the south side of the street would have crowded the appellant's intestate northward, if at all, away from the signal device. Likewise, if a vehicle going in the same direction had passed the appellant's intestate on Fifth Avenue South according to the law, it would have turned to the left when going by. Hence such supposed vehicle passing in the same direction that the appellant's intestate was traveling would have crowded the latter northward, if at all, away from the signal device. In order, then, for a vehicle passing the appellant's intestate in either direction to crowd the latter toward the signal device, it would be necessary for such supposed traveler to violate the law. For instance, in order to crowd appellant's intestate southward, toward the pedestal, a car passing in the same direction would have to travel to the right rather than to the left of the former's vehicle, contrary to law. See section 5022, 1927 and 1931 Codes. Also a vehicle traveling in the opposite direction, when passing the appellant's intestate, in order to crowd him southward toward the pedestal, would have to drive on the wrong side of the center of the street, contrary to law. See section 5019, 1927 and 1931 Codes.

There is no presumption that the supposed unknown person driving on Fifth Avenue South violated the law. On the other hand, the presumption is that such person, if he existed, observed the law. Gross & Hornung v. Scarr, 71 Iowa 656 (local citation 657), 33 N. W. 223; Kutchera v. Graft, 191 Iowa 1200 (local citation 1207), 184 N. W. 297, 26 A. L. R. 1257. So there is no basis, then, in the record, for the inferences considered.

Consideration now will be given to the appellant's conjecture that her intestate may have been looking for trains on the railroad tracks, and therefore his attention was momentarily diverted from the signal device. Of course, there is no evidence that the appellant's intestate was looking for trains, and appellant's petition infers that

he was not so looking. As a matter of fact, there were no trains at the time. If he saw the railroad tracks, it is obvious that he also must have seen the signal device. The lights, as before indicated, were such that he could have seen the signal device more easily than he could have seen the tracks. It is the duty of all travelers, when crossing railroad tracks, to look for trains. When so doing, they are required to so operate their vehicles that a signal device, if one existed, will not be struck. For an analogous holding, see Rosenberg v. Des Moines Railway Company (213 Iowa 152, 238 N. W. 703), supra. On the north side of the signal device in question there was ample clearance over which the appellant's intestate could have driven his car safely while looking for trains. Because of the facts above recited and the manner in which the automobile struck the signal device, it is apparent that the appellant's intestate drove directly against the stationary object without attempting to turn to one side or the other thereof. No basis is found, then, in this conjecture to presume that the appellant's intestate used due care under the circumstances.

There remains for discussion, then, the appellant's conjecture that a car going eastward, before turning south from Fifth avenue into Twenty-second street at the time in question, may have carried blinding lights which made it impossible for the appellant's intestate to see the signal device. Under division I we concluded that because of the overhanging city lights it was possible to see the structure regardless of on-coming lights. We cannot presume in any event that the assumed driver of an automobile coming from the west would carry lights contrary to the statute. Section 5049 of the 1927 and 1931 Codes. These sections provide:

"It shall be unlawful to use on a vehicle of any kind operated on the public highways of this state, including motorcycles, any lighting device of over four candle power, equipped with a reflector, unless the same shall be so designed or arranged that the directly reflected and undiffused beam of such light when measured seventy-five feet or more ahead of the light shall not rise above forty-two inches from the level surface on which the vehicle stands under all conditions of load."

The appellant's intestate, when approaching the traffic signal from the east, as shown by the plats and photographs, would be more than 75 feet away from the supposed on-coming automobile

222

approaching from the west before and as the latter would turn south on Twenty-second street. Consequently, if the assumed on-coming automobile carried legal lights, there would be no blinding effect sufficient to obscure the traffic signal or confuse appellant's intestate. As before said, there can be no presumption that the assumed driver of the on-coming automobile violated the law.

Manifestly, then, under the physical facts, the evidence introduced, and the surrounding circumstances, it is apparent that the presumption that appellant's intestate used ordinary care does not exist.

III. Evidence was offered by the appellant to prove that the driver of an automobile traveling westward on highway 20 would have to deviate his course a little to the north after entering upon Fifth Avenue South in order to miss the traffic device. Objections were made to some of these offers, and the district court excluded the evidence. The appellant predicates error on such ruling.

Plats and photographs were introduced into the evidence indicating that as a physical fact a driver traveling westward from highway No. 20 onto Fifth Avenue South necessarily must have to deviate his course slightly to pass the signal device. There is some evidence which went into the record without objection to the same effect. Hence, so far as the motion for a directed verdict is concerned, there is evidence in the record on the question involved. Therefore it was not prejudicial error under the circumstances to exclude certain other offers of evidence in this regard.

Wherefore the judgment of the district court is affirmed.

STEVENS, C. J., and FAVILLE, DE GRAFF, ALBERT, and WAGNER, JJ., concur.

EVANS and MITCHELL, JJ., take no part.