FLORENCE HITTLE, Administratrix, Appellant, v. WILLIS JONES et al., Appellees.

No. 41886.

OCTOBER 24, 1933.

REHEARING DENIED FEBRUARY 8, 1934.

McCoy & McCoy and H. E. De Reus, for appellant.

Hallagan, Fountain & Stewart and Johnson & Teter, for appellees.

KINDIG, J.—At about dusk on the evening of August 8, 1931, a collision between two automobiles occurred near the outskirts of the town of Lovilia, at a point where Primary Highway No. 60, a north and south paved thoroughfare, intersects with Buxton road, a county highway extending in an easterly and westerly direction. As a result of that collision, Clarence Hittle, a man twenty-four years of age, was killed. Immediately before, and at the time, the collision occurred, Clarence Hittle was driving a Model A Ford eastward on Buxton road, across Primary Highway No. 60. While Clarence Hittle thus drove his automobile, the defendant-appellee Ray Jones was operating a Whippet car northward, first toward and then into the intersection of Buxton road and Primary Highway No. 60. The cars, as before explained, collided at the intersection of the two roads.

After the death of Clarence Hittle, Florence Hittle was duly appointed the administratrix of his estate. Accordingly, Florence Hittle, as such administratrix, on September 17, 1931, commenced this action as plaintiff to recover damages from the defendants-appellees, Willis Jones and Ray Jones, for the wrongful death of Clarence Hittle. Because at the trial of the cause the district court directed a verdict against the plaintiff-appellant in the appellees' favor, she appeals. Willis Jones and Ray Jones were made defendants because one was the owner and the other the driver of the car.

It is said by the appellant that the appellee Ray Jones caused the death of her intestate through negligence. Many items of negligence are set forth in the appellant's petition. Among them are the allegations that the appellee Ray Jones exceeded the special speed limit of 25 miles an hour, failed to control his car immediately before the collision, and negligently refrained from turning to the left in order to pass behind the automobile driven by the appellant's intestate. Other grounds of negligence are also alleged. For the purposes of our discussion, we will assume, without deciding, that the appellee Ray Jones committed the negligence alleged.

I. In their answer to the appellant's petition, the appellees deny the allegations thereof. Consequently, in order to recover in the case at bar, it is necessary for the plaintiff appellant to allege and prove her intestate's freedom from contributory negligence. Realizing that responsibility, the appellant argues that she has met the burden.

On the other hand, it is earnestly contended by the appellees that the appellant has not shown that her intestate was free from contributory negligence at and prior to the collision. The appellant relies at this juncture on the rule permitting an inference that one deceased, because of the instinct of self-preservation, used due care. This inference is allowed under proper facts and circumstances.

"Direct and positive evidence that the decedent did not by his own negligence contribute to the injury is not required. Where such evidence cannot be obtained it is proper for the jury to consider the instincts of men, which naturally lead them to avoid danger, as evidence of due care on the part of the person injured." Hopkinson v. Knapp & Spalding Co., 92 Iowa 328, reading on pages 331 and 332, 60 N. W. 653, 655.

See, also, Dalton v. Chicago, R. I. & P. Ry. Co., 104 Iowa 26, 73 N. W. 349; Barrett v. Chicago, Milwaukee & St. Paul R. R. Co., 190 Iowa 509, 175 N. W. 950, 180 N. W. 670; Stukas v. Warfield-Pratt-Howell Co., 188 Iowa 878, 175 N. W. 81; Wilson, Admx., v. Chicago, Milwaukee & St. Paul R. R. Co., 161 Iowa 191, 142 N. W. 54.

In the case at bar, however, it is claimed by the appellees that the foregoing rule does not apply because there were eyewitnesses to the accident. If there were such witnesses to each material act

on the part of the appellant's intestate, then the rule relating to the instinct of self-preservation would not apply. Brown v. McAdoo, 195 Iowa 286, 188 N. W. 7; Stark, Admx., v. Tabor & Northern R. R. Co., 161 Iowa 393, 142 N. W. 977; Ames, Admx., v Waterloo & Cedar Falls Rapid Transit Co., 120 Iowa 640, 95 N. W. 161. Nevertheless, if the witnesses who attempt to describe decedent's actions in a case of this kind did not see him during all the material moments of his actions, the inference of due care may be drawn under the rule relating to the instinct of self-preservation. Gray, Admr., v. Chicago, R. I. & P. R. R. Co., 160 Iowa 1, 139 N. W. 934; Platter, Admx., v. Minneapolis & St. L. Ry. Co., 162 Iowa 142, 143 N. W. 992; Barrett v. Chicago, M. & St. P. R. Co. (190 Iowa 509, 175 N. W. 950, 180 N. W. 670), supra. During our discussion in the Barrett case, we said on pages 520 and 521:

"One Roach, who was at work in the carpenter shop, testified that Berger had his 'head turned towards the east' when the automobile went upon the railroad crossing. While several witnesses observed the decedents driving the car west on Fourth street and up Seigel street towards the crossing, no one pretended to observe what either Berger or Reinig did prior to the collision, save that Reinig was operating the car. No one was able or undertook to say whether either of the decedents looked or listened, or omitted so to do, for the approach of the train. In these circumstances, the inference that decedents exercised the instinct of self-preservation in approaching the track might well be considered in connection with the other evidence adduced in ascertaining whether they exercised that vigilance in keeping a lookout and listening which the law requires of every one in approaching a railroad crossing."

It appears from the record in the case at bar that witnesses observed the appellant's intestate driving eastward along Buxton road toward and into its intersection with highway No. 60. These witnesses saw the appellant's intestate stop at a stop sign stationed on the south side of Buxton road forty feet west of the west line of the pavement on highway No. 60. This pavement is eighteen feet wide. Also those witnesses testified that before the appellant's intestate stopped at the stop sign, and thereafter as he proceeded to the point of the collision, he operated his car at a speed of approximately ten miles per hour. Although the witnesses thus described the actions of the appellant's intestate, none of them at-

tempted to say whether he looked in the direction of the appellees' approaching car before entering the intersection and before entering the paved portion thereof. So far as anything appears in the record, the witnesses were not in a position to, and did not, see what, if any, observations the appellant's intestate made before attempting to cross primary highway No. 60. No witness testified whether the appellant's intestate did or did not make observations before entering, and while crossing, primary highway No. 60. Consequently there is no testimony or other evidence indicating what the appellant's intestate did or did not do in reference to making these observations. Under these circumstances the rule permitting an inference of due care, based on the instinct of self-preservation, may be applied (Barrett v. Chicago, M. & St. P. R. R. Co., 190 Iowa 509, 175 N. W. 950, 180 N. W. 670, supra, and other cases last above cited), unless the physical facts, evidence, and surrounding circumstances show that due care could not have been exercised.

II. If the evidence, including the surrounding circumstances and physical facts, indicates that the appellant's intestate did not exercise due care immediately before and at the time of the collision, then the inference of due care based upon the instinct of self-preservation does not exist. Oaks v. Chicago, R. I. & P. Ry Co., 174 Iowa 648, 156 N. W. 740; Sohl, Admr., v. Chicago, R. I. & P. Ry. Co., 183 Iowa 616, 167 N. W. 529; Wasson v. Illinois Central R. R. Co., 203 Iowa 705, 213 N. W. 388; Tegtmeyer v. Byram, 204 Iowa 1169, 216 N. W. 613; Brown v. McAdoo (195 Iowa 286, 188 N. W. 7), supra; Van Gorden v. City of Fort Dodge, 216 Iowa 209, 245 N. W. 736. Hence, when the evidence, physical facts, and surrounding circumstances warrant it, the district court may direct a verdict for the defendant in a case of this kind. Van Gorden v. City of Fort Dodge, 216 Iowa 209, 245 N. W. 736, supra, and other cases immediately above cited.

In determining whether the facts in a given case warrant the direction of a verdict on the theory of contributory negligence, two general propositions must be considered. They are: First, whether there is a conflict in the evidence as to what the one alleged to be contributorily negligent did or did not do at the time he was injured; and, second, whether there might fairly be different opinions with respect to the conduct of the one said to be guilty of contributory negligence, and one man honestly and reasonably would say that such conduct was in accord with ordinary prudence, while

another, just as sincerely and with equal reason, would contend that such conduct was not prudent. Murphy v. Iowa Electric Co., 206 Iowa 567, 220 N. W. 360; Perkins v. Schmit Construction Co., 215 Iowa 350, 245 N. W. 343. Under the facts in this record, when finally considered, there is no dispute concerning what the appellant's intestate did as he approached and drove into the intersection. Consequently there is no jury question on this proposition.

It remains to be determined, then, whether it can be said as a matter of law that reasonable minds would agree that the acts of the appellant's intestate in the premises constitute contributory negligence. That there could be no such disagreement will become clearer as the facts are developed.

 Buxton road, on which the appellant's intestate drove, was a county highway, while, as before explained, the north and south thoroughfare was a paved primary highway. At the intersection the pavement was eighteen feet wide, as previously stated. A stop sign was located, as already said, forty feet west of this pavement at the south side of Buxton road. There is no dispute in the record that the paved highway is a primary road. Both parties concede this. Sections 5079-b1 and 5079-b2 of the 1931 Code provide:

"5079-b1. Primary roads, and extensions of primary roads within cities and towns are hereby designated as arterial highways.

"5079-b2. The traffic on such arterial highways shall have the right of way over the traffic on any other highway, street or alley intersecting therewith. * * * *"

Because of these statutes, the appellee Ray Jones, when driving his car on Primary Highway 60, northward toward the intersection with Buxton road, had the right of way at the intersection over the appellant's intestate. It was the duty, therefore, of the appellant's intestate to yield that right of way. When yielding the right of way, it was necessary for the appellant's intestate to do it in such a way as not to endanger the appellee Ray Jones who, under the circumstances, was entitled to such right of way. Of course, the driver of a vehicle on a side street has a right to cross a primary or arterial highway under proper circumstances; but such crossing must be made in such manner and way as not to interfere with the right of way of those on the primary or arterial highway. According to the appellant's argument, the following is her theory of the location of the two cars as they approached the intersection:

"The evidence discloses that the defendant (appellee) Ray Jones was 264 to 293 feet south of the intersection as the plaintiff's (appellant's) intestate entered the same. That he (the appellee, Ray Jones) was driving 45 to 50 miles an hour. That he never reduced the speed of his car as he traveled 264 to 293 feet in approaching the intersection at the line of travel of the plaintiff's (appellant's) intestate; and that he (the appellee Ray Jones) never attempted to reduce his speed or attempted to avoid crashing into the plaintiff's (appellant's) intestate."

Furthermore, it is the appellant's claim that her intestate, after leaving the stop sign, traveled at the rate of ten miles an hour. A mere stop at the stop sign is not enough. The purpose of the stop is to enable the driver who stops the better to make efficient observations on the highway as due care may require. Masonholder v. O'Toole, 203 Iowa 884, 210 N. W. 778; Wood v. Branning, 215 Iowa 59, 244 N. W. 658; Pettera v. Collins, 203 Wis. 81, 233 N. W. 545; Shonicker v. English, 254 Mich. 76, 235 N. W. 866. Manifestly on the primary highway in the case at bar the traffic generally traveled on the paved portion. While it was the duty of the appellant's intestate to make observations for travelers on any part of the highway, yet he would most expect to find such travelers on the paved portion thereof. An efficient observation, therefore, could not be made alone at the stop sign, but the observer would be required not only to make observation at the stop sign but to continue his observation as he left the stop sign and approached the paved portion of the highway. Boerema v. Cook, 256 Mich. 266, 239 N. W. 314. Travelers suddenly turn from side streets, highways, and byways upon an arterial highway. They do this frequently within close proximity of another traveler who is also entering the primary highway. By this is not meant that the traveler entering the primary highway from a side street must necessarily constantly look from side to side on the primary highway until he has crossed the same. What, in fact, is required of such traveler crossing a primary highway is that he make observations at such times and places as due care under the circumstances demands. Plainly due care required that the appellant's intestate in the case at bar, immediately before entering upon the paved portion of the primary highway, make observations for an approaching automobile that might be expected thereon.

■ This duty of observation, however, the appellant declares was performed by her intestate. Her authority for so saying, she asserts, is the inference to be drawn from the instinct of self-preservation, before discussed. We are inclined to the opinion that under the restrictions before announced the appellant is entitled to that inference. Barrett v. Chicago, M. & St. P. R. R. Co. (190 Iowa 509, 175 N. W. 950, 180 N. W. 670), supra.

Assuming, however, that the appellant's intestate made observations at the stop sign before proceeding into the intersection, and continued to make observations thereafter while proceeding across the same, nevertheless when he looked he must have seen the appellees' car approaching from the south. It was dusk and the headlights were lighted on the appellees' car. According to the surrounding circumstances, the appellees' car must have been in the line of vision which the appellant's intestate would have as he left the stop sign and approached the paved portion of the highway. Nevertheless the appellant's intestate, at the slow speed of ten miles an hour, drove on the paved highway immediately in front of the on-coming car, which had the right of way. In an attempt to excuse her intestate, the appellant argues that there was a speed limit on the paved highway which affected the appellee Ray Jones. This limit was twenty-five miles an hour according to an arterial highway sign. There is a dispute in the record concerning the validity of this sign because of the sparse settlement around it. For the purposes of this discussion, however, we will assume that the speed limit was twenty-five miles per hour, and that the appellee Ray Jones was governed thereby. Because there was such speed limit, the appellant argues that her intestate, who was familiar with the surroundings, in determining his conduct when crossing the primary highway would rely upon the fact that the appellee Ray Jones would not drive faster than twenty-five miles an hour. See Hogan v. Nesbit, 216 Iowa 75, 246 N. W. 270; Jelsma v. English, 210 Iowa 1065, 231 N. W. 304; Lein v. John Morrell & Co., 207 Iowa 1271, 224 N. W. 576; Wolfson v. Jewett Lumber Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336; Wambeam v. Hayes, 205 Iowa 1394, 219 N. W. 813.

Furthermore, it is said by the appellant that her intestate, relying upon that speed limit, may have been deceived concerning the excessive speed of the car driven by Ray Jones. Nothing in the record indicates whether the appellant's intestate took the speed

limit into consideration when he drove across the intersection; nor is there any indication in the record that the appellant's intestate was deceived concerning the excessive speed of the car driven by Ray Jones. The rule relating to the inferences that may be drawn from the instinct of self-preservation does not aid the appellant in her claims that her intestate at the time actually took into consideration the fact that the appellee Ray Jones would not violate the speed limit; nor does such inference based upon the instinct of self-preservation permit us to assume that the appellant's intestate was deceived concerning the excessive speed of the car driven by the appellee Ray Jones.

This rule relating to the instinct of self-preservation goes no farther than to supply, for an otherwise deficient record, the inference that the appellant's intestate used due care. Ames v. Waterloo & Cedar Falls Rapid Transit Co., 120 Iowa 640, 95 N. W. 161. In the Ames case, we said, reading on pages 645 and 646:

"Counsel for appellant contend, however, that the presumption arising from the instinct of self-preservation is not to be limited to the very instant of going into danger, as to which we have seen, by the cases already cited, it is expressly negatived and overcome, but that it may be presumed that deceased, on leaving the curbing, about 17 feet from the street car track, looked in the direction from which this car was coming, and, seeing it further south than the line of wagons, which must have extended at least 150 feet along the track, calculated that, if the car was approaching at a lawful rate of speed, he would have time to cross the track before the car would reach him, and that the question whether this calculation on his part was reasonable should have gone to the jury. There are several objections to this line of reasoning. In the first place, there is not a scintilla of evidence that deceased looked before he left the curbing and saw the approaching car so far away that it would not reach him, if moving at a lawful rate of speed, until he might reasonably expect to have crossed the track. There is no showing whatever as to what deceased did or saw when he left the curbing. Certainly the presumption of the exercise of the instinct of self-preservation cannot constitute affirmative evidence of the existence of facts prior to and remote from the occurrence of the accident itself. It might as well be presumed, to justify deceased in not taking precautions at the time of the collision, that he had been advised by the manager

of the street car company that no cars would be run on the track on that day. If he had had such advice, he might perhaps be excused for not looking for a car, but certainly the presumption arising from the instinct of self-preservation would not constitute evidence that he had had any such advice."

Obviously, then, the rule relating to the instinct of self-preservation will not furnish for the appellant evidence of the affirmative excuses offered for the negligence of the appellant's intestate, but, regardless of the rule relating to the instinct of self-preservation, the fact that the speed limit existed may be taken into consideration with other facts and circumstances bearing on the contributory negligence of the appellant's intestate. When the front part of the car driven by the appellant's intestate was immediately west of the pavement on the Primary Highway No. 60, the car driven by the appellee Ray Jones, under the theory of the appellant, must have been only eighty or ninety feet south of the line where the car driven by the appellant's intestate would cross. That is true because it is the claim of the appellant that her intestate drove ten miles an hour while the appellee Ray Jones was driving from forty-five to fifty miles per hour. In view of the slow speed of the car driven by the appellant's intestate, it is manifest that he could have stopped it almost instantly. From the time when the front part of the car driven by the appellant's intestate was immediately west of the paved highway, he, without changing the rate of speed, drove approximately eighteen feet before the collision. The car driven by the appellee Ray Jones struck the car operated by the appellant's intestate at or near the rear door. At that time the car driven by the appellant's intestate was on the east side of the center of the paving, with the front end of the car near the east line of the paving.

Assuming (not because the appellant is entitled under the law to the assumption, but only for the purpose of the discussion) that the appellant's intestate, when at the stop sign, believed that the appellee Ray Jones would obey the law and go only twenty-five miles an hour, and assuming farther that at the time the appellant's intestate was at the stop sign he was deceived concerning the excessive speed of the car driven by the appellee Ray Jones, nevertheless the appellant's intestate could not continue under that deception when he could see, or as a reasonably prudent man should have seen, that the appellee Jones, when eighty or ninety feet away, was driving greatly in excess of twenty-five miles per hour. Hanson v. Manning,

213 Iowa 625, 239 N. W. 793; DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350; Thieme v. Weyker, 205 Wis. 578, 238 N. W. 389; Zuidema v. Bekkering, 256 Mich. 327, 239 N. W. 333; Pettera v. Collins (203 Wis. 81, 233 N. W. 545), supra; Chandler v. Buchanan, 173 Minn. 31, 216 N. W. 254; Smith v. Ormiston, 242 Mich. 600, 219 N. W. 618; Kemmish v. McCoid, 193 Iowa 958, 185 N. W. 628. See, also, Hutchinson v. Sioux City Service Co., 210 Iowa 9, 230 N. W. 387; Middleton v. Omaha & Council Bluffs Street Ry. Co., 209 Iowa 1278, 227 N. W. 915.

When within eighty or ninety feet of the car driven by the appellee Ray Jones going from forty-five to fifty miles per hour, the appellant's intestate, as a reasonably prudent man, must have known that such car was not traveling twenty-five miles per hour. Those who drive automobiles upon the public highway must exercise their senses in determining the safety of themselves and others. The situation here revealed is different from that presented where two vehicles are approaching an intersection and the right of way is to be determined by the one who rightfully enters first. In the case mentioned, it is not a certainty who has the right of way. This question is to be determined by the facts and circumstances relating to the approach. Under the record in the case at bar, however, there was no controversy concerning who had the right of way. A statute definitely and specifically gives the right of way to the traveler on the primary highway. Of course, the man who operates a vehicle on the primary highway has no right to deliberately or negligently injure one who is attempting to propel his vehicle over such highway from a side road. He must operate his vehicle at such speed and in such a manner and way as is contemplated by law. On the other hand, the traveler on the primary highway has a right to assume that those on the side roads will respect his right of way.

Thus under the circumstances of this case it is very apparent that the appellee Ray Jones had the right of way and it was the duty of the appellant's intestate to yield it. Rather than so doing, however, the appellant's intestate drove upon the pavement at the slow speed of ten miles an hour when the appellee Ray Jones in his vehicle was only eighty or ninety feet away, traveling at the high speed of from forty-five to fifty miles an hour. A collision was imminent, and the appellant's intestate, as a reasonably prudent man, must have known it if he made any observations at all. If he

did not make such observations as the rule hereinabove stated requires, then he was guilty of contributory negligence as a matter of law. See Masonholder v. O'Toole (203 Iowa 884, 210 N. W. 778), supra; Wood v. Branning (215 Iowa 59, 244 N. W. 658), supra; Pettera v. Collins (203 Wis. 81, 233 N. W. 545), supra; Shonicker v. English (254 Mich. 76, 235 N. W. 866), supra; and other cases above cited. To hold that the appellant's intestate need not look under the circumstances, or that if he did look he need not see what was before him, would permit confusion and disaster upon the highways. Under the evidence, physical facts, and circumstances here revealed, it is apparent that the inference arising because of the instinct of self-preservation does not apply to the act of the appellant's intestate in attempting to cross the pavement immediately in front of the swiftly approaching car driven by the appellee Ray Jones. Reasonable minds under this record cannot possibly disagree on the question of the negligence of the appellant's intestate. He was negligent, and no reasonably prudent man, under the circumstances, will deny the fact. Clearly, then, the appellant has not carried the burden of proving that her intestate was free from contributory negligence. Because of this, the district court properly directed a verdict.

Wherefore, the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

ALBERT, C. J., and EVANS, CLAUSSEN, and DONEGAN, JJ., concur.