EMMA GRABY, Administratrix, Appellee, v. W. R. DANNER, Appellant.

No. 46568.

MAY 8, 1945.

OPINION MODIFIED AND REHEARING DENIED SEPTEMBER 22, 1945.

Healey & Reynolds and Kenneth H. Davenport, all of Creston, for appellant.

Thomas E. Mullin and George F. Allen, both of Creston, for appellee.

WENNERSTRUM, J.— Plaintiff in an action at law sought recovery for damages against the defendant for the claimed wrongful death of plaintiff's intestate. It is contended that his death was caused by the negligence of the defendant, a police officer, in the operation of an automobile. The defense was a general denial but it was particularly claimed that the death of the plaintiff's intestate grew out of conditions that arose during a practice blackout as a necessary war measure. The trial court did not admit evidence bearing upon this practice blackout and did not submit this claimed defense for the consideration of the jury. A verdict was returned in favor of the plaintiff. Upon submission of motions for a new trial, exceptions to instructions, and other motions on behalf of the defendant, the trial court overruled them. Judgment was thereafter rendered against the defendant on the verdict as returned. He has appealed.

On December 14, 1942, as the result of authorization issued by the Seventh Service Command of the United States Army, and under the direction of the civilian agency having to do with civilian defense in the state of Iowa, a state-wide practice blackout was held. The appellant is a police officer in the city of Creston and was directed by his superior officer to go to a residential portion of the city to stop cars during the blackout. While appellant was driving during that period the appellee's decedent was struck by an automobile owned by the city of Creston and operated by appellant.

There were no eyewitnesses to this accident and the appellant

testified that he had not observed the appellee's decedent until he struck him. There is evidence that a short time before the decedent was struck he had been seen on a path or on ground which parallels the street where he was hit by appellant's car. The decedent had been assisting in connection with the blackout in the city of Creston and had called at near-by residences to direct that all lights in the homes be extinguished. The place where the collision or accident occurred was on a comparatively narrow unpaved street in the southeast portion of Creston. There is no sidewalk along the street, other than the path previously referred to, and there are no cross-walks or intersections at or near the place of the accident. The point where the front end of the automobile apparently struck the decedent was approximately forty feet south of the place on the path paralleling the street where the decedent was last seen.

The appellant has assigned fifty-seven independent claimed errors on which he relies for reversal. They have been classified under ten general groups in the appellant's brief and argument. We shall comment on some of these claimed errors but not necessarily on all of them.

I. The appellant throughout all stages of the trial and through the presentation of properly submitted pleadings and motions sought to submit as a defense that by reason of the practice blackout the appellant should not be held to the same degree of care to which he would otherwise have been held if there had not been such a condition. It is appellant's particular claim that the directives and orders relative to the blackout as a necessary war measure were of such a nature that the general rules of law relative to the negligent operation of an automobile were superseded thereby. The trial court in passing upon these matters refused to take judicial notice of the practice blackout and to admit in evidence certain government publications relative to the carrying out of it, and by its rulings on various other similar propositions arising by reason of the submission of certain motions, and by the refusal to give certain requested instructions, held adversely to the appellant's claim that conditions resulting from the blackout were a legal and proper defense to the appellant.

The office of civilian defense was established on May 20,

1941, by reason of Executive Order No. 8757, which is found in 6 Fed. Reg. 2517. The Federal Government appropriated money to implement the work of civilian defense. 50 U. S. C. App., sections 741, 742. By reason of offered exhibits it is shown that certain military authorities authorized the civilian defense agency in the state of Iowa to carry out a state-wide practice blackout on December 14, 1942. The secretary of the Iowa Industrial and Defense Commission directed that this practice blackout be held by virtue of a telegram sent to all county defense council chairmen in the state of Iowa, a civilian war agency. Printed instructions were thereafter furnished all individuals connected with this civilian war activity.

At the time of the accident there was no emergency war legislation in Iowa which would implement the activities of the civilian defense agencies in connection with their war responsibilities. Such a law was passed by the Fiftieth General Assembly, chapter 61 of the Acts of the Fiftieth General Assembly, 1943. Certain immunities from liability are incorporated in this legislation. Somewhat similar legislation had been passed by the New York state legislature and was considered in the case of Lofaro v. Bee Cab Corporation, by the Supreme Court, Kings County, 180 Misc. 756, 757, 43 N. Y. S. 2d 737, 738. This nisi prius court, in passing on the effect of the New York statute, made this statement:

"I am in accord with the contention of the plaintiff to the effect that section 40 of the New York State War Emergency Act of 1942 (L. 1942, ch. 544) does not provide a blanket immunity from liability to all motorists using the public highways at nighttime. * * * I am, therefore, of the opinion that the pleading of this section is no different from the pleading of any other statute relating to speed and rules of the road. The affirmative defense, therefore, is insufficient in law and should be stricken."

English and Dominion courts have commented in negligence cases upon conditions arising by reason of an actual blackout. The statements made by these courts are of particular value in connection with our consideration of the present case. In the

case of MacDonald v. Star Cabs Ltd., 1943 (British Columbia Supreme Court), 1 D. L. R. 420, 422, it is stated:

"He was driving at a rate of speed of between 10 to 15 m.p.h. He chose to drive in this way, disregarding entirely the rights of others and hoping that others on the street would see his lights and avoid him. He was on a car-line street and must have known that passengers would be getting on and off street cars, yet he admits that he could not tell when he was approaching an intersection. The statute imposes special duty on him where a street car stops to take on or let off passengers. The onus is on him to establish that he observed that duty. See Macdonald v. Bailey, [1934] 1 W. W. R. 342; Rolland v. Warsaba (1937), 45 Man. R. 241. It appears to me that in driving under such conditions at such speed and with practically no visibility he was guilty of the grossest negligence."

In the case of Sparks v. Edward Ash, Limited, 1943, 1 K. B. 223, this English court, in passing on a case arising out of injuries received during a blackout, held that the defense of contributory negligence on the part of the plaintiff was available to the defendant and also that certain previously enacted regulations as to requirements exacted from drivers of motor vehicles were held not to be invalid as being unreasonable. In none of the cases to which reference has been made has there been any apparent holding to the effect that conditions arising by reason of a practice or actual blackout relieved the party who it was claimed was negligent in the operation of a motor vehicle.

The appellant in this case has presented to us many citations which it is claimed would be the basis for our holding that legislation enacted by the Federal Government, or presidential directives issued in connection with the President's war powers, should be considered in litigation arising in a state court. We do not believe that the facts as presented by the record in this case justify such a holding at this time. The record shows that the office of civilian defense was established by reason of a presidential directive under the President's war powers. Under the record as presented it is our conclusion that the court was correct in its various rulings that the authori-

zation for a practice blackout was not a proper defense on behalf of the appellant, would not in itself relieve the appellant of liability if negligence in other respects was properly shown, and was not a factor to be considered by the jury in determining whether appellant was negligent.

The trial court submitted only two grounds of negligence, namely, the failure to operate the automobile so as to be able to stop within the assured clear distance ahead and the failure to operate the automobile with proper lights being displayed. The statutory requirements relative to the necessity of driving so as to be able to stop within the assured clear distance ahead are found in section 5023.01 of the 1939 Code of Iowa, and the statutory enactment as to proper illuminating devices on an automobile is found in section 5033.04 of the Code.

We are of the opinion that these laws duly enacted by the legislature cannot and should not be abrogated by reason of circumstances arising under conditions such as are presented by the record in this appeal.

It is our conclusion that the legislature has indicated its attitude in regard to a somewhat similar situation by the enactment of section 5017.03 of the 1939 Code of Iowa, which is as follows:

"5017.03 Public officers not exempt. The provisions of this chapter applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles owned or operated by the United States, this state or any county, city, town, district, or any other political subdivision of the state, subject to such specific exceptions as are set forth in this chapter with reference to authorized emergency vehicles."

Despite the appellant's claim that the conditions arising by reason of war activities should necessarily change the statutory duties of a motor-vehicle driver, it is our conclusion that the grounds of negligence as submitted by the trial court were properly incorporated in its instructions. We further hold that the contentions of the appellant that the blackout conditions should be considered as a defense are without merit.

II. Appellant claims error because the trial court

failed to enforce the provisions of Rule 136 of the Rules of Civil Procedure relating to a pretrial conference upon the asserted defense of the blackout. But the trial court had stricken out this defense. Consequently, appellant was not entitled to a pretrial conference on this stricken defense. The same is true with respect to the claimed error in the trial court's refusing to take judicial notice of the blackout and matters pertaining thereto. Since the blackout defense was properly stricken, no error can be predicated upon the refusal to take such judicial notice.

■ III. It is one of the claims of the appellant that the burden as to showing of freedom from contributory negligence was not met by the appellee and that in one of the court's instructions the court committed error when it commented on the fact that there is an inference which the law raises in favor of the decedent to the effect "that he was at the time" of the accident "acting as an ordinary human being would act for his own safety, taking into consideration the time, place and circumstances surrounding him at the time."

We are satisfied that the court properly instructed and that the evidence definitely showed the applicability of the no-eyewitness rule.

We believe our comments in the case of Hayes v. Stunkard, 233 Iowa 582, 588, 10 N. W. 2d 19, 22, have application to the facts in the instant case. We there said:

"We feel the question of contributory negligence was for the jury, under the rule announced in Hopkinson v. Knapp & Spalding Co., 92 Iowa 328, 332, 60 N. W. 653, 655, that:

" ' * * * it is proper for the jury to consider the instincts of men, which naturally lead them to avoid danger, as evidence of due care on the part of the person injured.'

"See, also, Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 249 N. W. 220; Hittle v. Jones, 217 Iowa 598, 250 N. W. 689, and cases cited. But defendant argues that this rule relating to the instinct of self-preservation does not apply because here the driver was an eyewitness.

"The eyewitnesses whose testimony will defeat the presumption must be persons who, from their observation, are able to

say what the deceased did or did not do in the observance of due care for his own safety. In the Lorimer case the driver of the car observed the deceased pedestrian's body after the impact and as the body was 'going up over the left front side of the car.' We there held the question of contributory negligence was for the jury under the no-eyewitness rule.

"In the Hittle case it was also argued that the rule relating to self-preservation did not apply for there were eyewitnesses to the accident, but we stated [217 Iowa 598, 601, 250 N. W. 689, 691]:

" 'Nevertheless, if the witnesses who attempt to describe decedent's actions in a case of this kind did not see him during all the material moments of his actions, the inference of due care may be drawn under the rule relating to the instinct of self-preservation.' "

Under the record in the present case we hold that the no-eyewitness rule was applicable and that the court was correct in its rulings and instructions relative to the particular question and of which appellant makes complaint.

We have given consideration to the several other claimed errors which are commented upon in appellant's brief. It would unnecessarily lengthen this opinion to discuss all of them. However, upon a review of the entire record we have reached the conclusion that the case was properly tried and that the trial court committed no error that can be the basis of a reversal, and we therefore affirm.—Affirmed.

All JUSTICES concur.