HERMAN MARKWORTH, Administrator, Appellee, v. STATE SAVINGS BANK OF WODEN (L. A. ANDREW, Receiver) Appellant, H. O. SWINGER, Defendant.

No. 41499.

DECEMBER 12, 1933.

Thomas & Loth, for appellant.

Frank W. Senneff and Senneff, Bliss, Witwer & Senneff, for appellee.

ANDERSON, J.—The material question here involved is one of fact. The appellant bank received an assignment of an insurance policy on February 23, 1923, of approximately $2,000, upon the life of Paul C. Markworth. The assignment was for security of indebtedness of said Paul C. Markworth to the bank, and recited an assignment and transfer to the bank of the policy of insurance, "as interest may appear." On March 1, 1924, the bank took from Paul C. Markworth a chattel mortgage covering crops and other personal property and securing one note for $1,250.00, and "every and all of accounts, notes and dues in any manner due or owing by me to the mortgagee or assigns at any time until this mortgage is fully paid." Shortly after this last transaction, Paul C. Markworth left the country and later died. The bank collected upon the insurance policy $2,292.53. It also collected from the chattel mortgaged property $567.36, or a total of $2,859.89. After this controversy arose it paid to the administrator of the estate of Paul C. Markworth some small amount of money collected by it, and retained the balance to pay an alleged indebtedness due it from the said Paul C. Markworth. A part of the indebtedness for which the bank claimed a lien upon the insurance proceeds involved a promissory note of $500 dated March 19, 1921, and signed by Sidney Lundgren, Paul Markworth, and Clarence Lundgren, in the order designated. The first and last signatures were written in ink, the middle one in pencil. The amount due upon this note at the time of the trial was $1,026, and this amount had been retained by the bank to satisfy the said note. The controversy here is as to whether said note constitutes a valid indebtedness against the estate of Paul C. Markworth. The trial court found that it did not, and entered judgment against the bank for the sum of $1,026 and costs. From such finding and judgment the bank prosecutes this appeal.

The plaintiff brought his action, as administrator of the estate of Paul C. Markworth, alleging the collection by the bank of the sum of $2,292.53, upon the insurance policy, and the appropriation thereof by the bank. The bank by answer admitted that it had collected and appropriated the money, admitted the assignment of the insurance policy to it, and alleged that at the time of the assignment the said Paul C. Markworth was indebted to it and later incurred additional indebtedness; that the assignment to the bank permitted it to receive and retain the proceeds of the policy as its interest might appear, to wit, the amount he might then owe it; and while

it does not appear in the abstract, we will assume that the bank claimed that at the time of the collection of the insurance by it, the indebtedness of Paul C. Markworth to the bank approximated the amount of the insurance collected. There is no dispute but what inclusive of the `$500 note here involved the indebtedness of Paul C. Markworth to the bank approximated the amount of the insurance collected. The sole question of fact therefore narrows down to the question: Was the bank entitled to withhold the money collected by it in extinguishment of the $500 note? The plaintiff claims that this note was not a binding obligation of Paul C. Markworth; that it was not Paul C. Markworth's indebtedness; that it was executed by him without consideration and as an accommodation to the bank. This is the question we will first discuss. Some question is raised as to where the burden of proof rested; the plaintiff contending that the burden was upon the bank to prove that its alleged indebtedness was valid and subsisting, and the defendant contending that the burden was upon the plaintiff to show that the note in question was not a valid and subsisting indebtedness against the estate of Paul C. Markworth, on account of being executed without consideration and as an accommodation to the bank. We do not think this question is highly material to a determination of the fact question. However, it would seem that the burden was upon the bank in the first instance to show an indebtedness equaling the amount of money it appropriated, but that it met this burden by the introduction in the record of the promissory note in question. This note was in due form and imported a consideration. The burden would then be upon the plaintiff to sustain its allegations that the note was signed by Paul C. Markworth without consideration and as an accommodation to the bank.

Paul C. Markworth was dead at the time of the trial, and the evidence as to the facts and circumstances surrounding his execution of the note in question is necessarily to quite an extent circumstantial, although much of it is quite direct and convincing. It appears without dispute that the chattel mortgage, heretofore mentioned, secured a described note for $1,250. It also secured "Every and all of accounts, notes and dues in any manner due or owing * * * at any time until this mortgage is fully paid." This mortgage was taken by the bank at a time when the note of $500 was past due more than three years. It appears that an action was brought upon this chattel mortgage in March, 1926, alleging an

indebtedness due the bank thereon of $1,250 only. The chattel mortgage was broad enough by its terms to have covered the $500 note in question. There is testimony in the record that the managing officer of the bank, upon being asked as to the amount of Paul's indebtedness, said that it was in the neighborhood of $1,300. Otto Markworth testified, "I says to him (Swingen, cashier of the bank), 'About how much does Paul owe you?' 'Well,' he said, 'around the neighborhood of $1,300.00, which was renewal of debts he had owed for years.'" Frank Senneff, an attorney who represented the Paul C. Markworth estate, and also represented a Mr. Armstrong, in a suit involving the chattel mortgage, also testified: "He (Swingen) told me that Paul was indebted to the bank some where around $1,300.00; he also stated, 'I am going to foreclose my chattel mortgage, and if we have any loss it will be very small, so I am not going to bother about the corn.'" H. C. Armstrong, who was the title holder of land occupied by Paul C. Markworth, also testified that in conversation with Mr. Swingen, he (Swingen) told Armstrong that Paul "owed him about $1,250.00, and he thought he had enough stuff there to cover it." It must be remembered that at the time of these various conversations, Paul C. Markworth had left the country, and the bank could have gotten no obligations from him thereafter. In 1929, and after the death of Paul, at a time when the bank was claiming the additional amount here involved as an indebtedness due from Paul C. Markworth, the witness Senneff, in a conversation with Swingen, said he could not understand why he was now claiming so much money, while in 1924 he was claiming around $1,250. The only response to this, as testified to by Senneff, was, "I am telling you now that he owes that amount, something over $2,000.00," and that he made no other explanation. This testimony is quite pertinent and deserves consideration in conjunction with the testimony to which we will now refer.

It is not claimed by the bank that Paul received anything from the bank upon the note in question or on account of signing the same. It was a note of Sidney and Clarence Lundgren. The nature of the signatures thereto raises some question in the mind. As we have stated, the first of the signatures was Sidney Lundgren, written in ink; the next is Paul Markworth, written in pencil; the next is Clarence Lundgren, written in ink. Paul was dead at the time of the trial, and we do not have his version of the transaction, but his brother Otto, who signed a similar note as an accommodation to

the bank at about the same time, testified, when he was asked as to the character of these notes, "Well, I didn't want to sign and said I got debts enough of my own without signing notes for anybody else, and he (Swingen) said: 'It is just simply an accommodation to help at the bank; several others signed and your brother Paul signed.' I said, 'Will I ever have to pay it,' and he said 'No, absolutely not.' And he said, 'Do you think Paul and the rest of the fellows would sign up if they had to pay it?'" We had the question as to whether or not the Otto Markworth note in which he signed with the same Lundgrens, and which was payable to the same bank as the one here involved, before us in the case of State Savings Bank v. Markworth, 203 Iowa 461, 212 N. W. 729. In that case, we said, on page 462:

"Swingen, cashier, testifies: 'I told him I wanted him to sign as security for the boys so the notes would be passed by the directors and the bank examiners.'"

And we there held that that note was without consideration and an accommodation to the bank, and that the bank could not recover thereon. That note was given at the same time as the one here in suit, and while the holding in that case cannot be decisive in this, yet it is entitled to some weight and consideration.

There is testimony in this record from Clarence and Sidney Lundgren that they never talked to Paul Markworth or asked him to sign their notes due the bank, and they testified that Swingen had told them that he "had got some guys to sign our notes, and mentioned Paul Markworth and Otto Markworth," along with two other named persons. The Lundgrens did not know that Swingen, the cashier, was going to talk to Paul about signing their notes. They did not talk to Paul about it before or after he had signed, but they learned from Swingen that the other signatures had been procured to the various notes, including that of Paul. It is not claimed that there was any consideration for Paul Markworth's signature to the note in question, and under this record, we are constrained to hold that the signature of Paul C. Markworth to the note in question was purely an accommodation to the bank. There is no evidence in the record that any extension of time or additional credit was given to the Lundgrens by reason of Paul C. Markworth's signature. The Lundgrens did not ask the favor. The bank parted with nothing by reason of Paul C. Markworth's signature. The

Lundgrens testified that whatever money they got from the bank, they had gotten prior to the signing of their note. Paul C. Markworth got nothing for his signature, and the bank parted with nothing by reason of his signature. The testimony is that Swingen, the cashier, had said, "It is just an accommodation to help the bank, several others signed, and your brother Paul signed." Add to the testimony to which we have briefly referred, the fact that the Lundgrens had already received whatever money or credit the bank gave or extended to them, that there was no extension of time, and also the repeated statements of the cashier of the bank, made several years afterwards, that Paul only owed the bank about $1,300, and add the further fact that three years after the note in question was signed by Paul, the bank took a chattel mortgage from him purporting to cover all of his indebtedness to the bank, but not mentioning the $500 note in question, and we have a situation which convinces us that the bank did not consider, until after Paul's death, that the note in question was a valid, enforceable obligation as against him, and that the note in question was without consideration as to Paul C. Markworth, and was signed by him only as an accommodation to the bank.

■ Contention is made by the bank, appellant, that the court erred in permitting an amendment to the plaintiff's petition during the trial setting up the fact that the note in question was without consideration and an accommodation to the bank only. During the introduction of testimony as to the character of the note, objection was made by the appellant bank that the offered testimony was irrelevant and was not within any issues presented by the pleadings. To this objection the plaintiff's attorney stated, "I am offering it with the thought in mind to make the pleadings conform to the proof." The amendment was filed the same day and prior to the closing of the record. The appellant bank objected to the filing of the amendment and filed a motion to strike it because it was filed too late. Upon this motion being overruled by the court, the appellant bank then asked orally that the case be continued over the term at the plaintiff's costs. This the court refused to do, but the court did continue the further hearing of the case from the 14th day of October, 1930, to the 16th day of November, 1930, for the purpose of permitting the defendant to meet the issues and complete the record. This gave the defendant thirty-four days in which to meet the issue. While the amendment did present plainly the plain-

tiff's contention as to the character of the note in question, we do not think it changed the issues or the theory upon which the case was tried. Even if it did, the defendant bank was given ample time for preparation to meet the issue. The case was continued until one week before the succeeding term of court, and there is no showing that the defendant would have been better able to meet the issue had the case been continued to the November term. Cases cited by the appellant do not support its contention. The case of Cole v. Thompson, 134 Iowa 685, 112 N. W. 178, was a law case. It was tried and submitted to the jury upon a certain theory, and, after the return of the verdict, an amendment was filed changing the issue and theory. Many of the other cases cited by the appellant were also cases at law, and we find no pronouncements in any cases cited contrary to our ruling here. The trial court has a wide discretion as to the allowance of amendments, and we do not think such discretion was abused in this instance.

■ The appellant bank presents here for the first time a complaint that the continuance should have been granted and the case tried before another judge, in view of the fact that Judge Kepler had tried the other case, State Savings Bank v. Otto Markworth, 203 Iowa 461, 212 N. W. 729. But this complaint was not made to the trial court and it is too late to make it here.

■ Appellant further contends that the amendment not being verified should have been stricken; that the other pleadings had been verified. But Code, section 11166, answers this contention.

"Verification shall not be required to any pleading of a guardian, executor. * * *"

And we held in Hicks, Administratrix, v. Insurance Company, 166 Iowa 532, 147 N. W. 883, L. R. A. 1915A, 872, that where the plaintiff sues as administrator he is not required to verify his pleadings.

There are other contentions made by appellant bank in its brief and argument, all of which we have considered, and we conclude that there is no merit in any of them. We believe that the ruling of the trial court in its findings and judgment was right and that it should be affirmed.—Affirmed.

ALBERT, C. J., and EVANS, KINDIG, MITCHELL, STEVENS, and KINTZINGER, JJ., concur.