JOHANN ARENDS, Appellant, v. MABELLE DEBRUYN, Administratrix, Appellee.

No. 42191.

JANUARY 16, 1934.

530

Sullivan, McMahon & Linnan, and Senneff, Bliss & Senneff, for appellant.

Breese & Cornwell, for appellee.

STEVENS, J.— ██ Kossuth county trunk road "B" in Kossuth county lies east and west. It intersects with county road "N" which lies north and south. About 3 o'clock in the afternoon on a clear day, a collision occurred between the Ford Tudor coach being operated by appellant and the automobile of Syrus DeBruyn, resulting in the death of DeBruyn and damages to the person and automobile of appellant for which recovery is sought. The evidence is without substantial dispute.

Appellant was proceeding eastward on county trunk road "B" and appellee's decedent was proceeding northward on an intersecting highway. The speed of appellant's car was from 35 to 37 miles per hour and the speed of the north-bound automobile was 74 miles per hour. The collision occurred about the center of the intersection east and west, possibly a short distance to the west. As he approached the intersection from the west, appellant removed his foot from the accelerator, looked to his right, but seeing no one approaching, proceeded into the intersection without materially reducing his speed. Appellant first entered the intersection. The north-bound car at this time was a few rods south of the intersection. Appellant's car was struck on the right side immediately in the rear of the front fender. The court directed a verdict upon the specific ground that appellant was guilty of contributory negligence.

The petition alleged that the east and west highway is a county trunk road and that the north and south highway, on which deceased was traveling, is a local county road. No testimony was introduced on this subject. Appellee in her answer said that she admits and alleges that on October 10, 1931, plaintiff was driving his Ford car eastward on Kossuth county trunk road "B" and that at the time Syrus DeBruyn was driving his automobile in a northerly direction on county road "N". The secondary road system of each county embraces all public highways, except primary and state roads and highways, within cities and towns. Section 4644-c2, Code 1931. Section 4644-c4 further provides:

"The roads which are now designated as county roads by the plans and records now on file in the office of the county auditor

of each county and in the office of the state highway commission shall hereafter be known as county trunk roads. All other roads of said secondary system shall be known as local county roads."

By the provisions of section 5079-d1, county trunk roads outside of cities and towns are designated as arterial highways. The classification of the respective highways is important because of the respective duties imposed by statute upon traffic at the intersection of highways outside of cities and towns.

It is provided by statute that:

"The traffic on such arterial highways shall have the right of way over the traffic on any local county road intersecting therewith. At the intersection of said arterial highways, the county board of supervisors shall determine by the erection of signs, which traffic shall have the right of way." Section 5079-d2.

By section 5079-d3 it is provided:

"At the intersection of such local county roads with arterial highways the traffic of said side roads shall come to a stop upon entering said arterial highways or may proceed cautiously without coming to a stop as the county board of supervisors may determine."

Section 5079-d4 requires that:

"The county board of supervisors shall furnish, erect and maintain suitable standard metal signs on side roads or streets directing traffic thereon which is approaching a county trunk road to stop or proceed cautiously as the case may be. The cost of such signs shall be paid out of the county trunk road maintenance or construction fund. Traffic on such roads shall comply with such signs."

As appears from a consideration of the foregoing statutes, if the intersection is of two arterial highways, the question as to who shall have the right of way is to be determined by the county board of supervisors of each county by the erection of signs. If, however, the intersection is of an arterial and local county road, the traffic upon the local county road shall come to a stop upon entering the arterial highway or may proceed cautiously without coming to a stop as the county board of supervisors may determine. The record in this case is silent as to what determination the board of supervisors has made and also as to whether signs were posted

at or near the intersection in question, as required by the statute. Photographs introduced in evidence disclosed the presence of some kind of a sign but, because illegible, the court is unable to determine their precise nature.

As already indicated, the traffic on arterial highways has the right of way over the traffic on local county roads at intersections therewith. It is conceded in this case that, instead of stopping at the intersection, DeBruyn proceeded north at a speed of seventy-four miles per hour. It is also conceded that appellant did not stop his car. According to his testimony, he did not know of the approach of DeBruyn's car until the instant of the collision, although he claims to have looked south just as he entered the intersection. Just what duty is imposed by law upon drivers of motor vehicles upon local county roads when approaching arterial highways, the classification of which is in no way designated, we shall not undertake to determine. The evidence does not disclose whether DeBruyn, in fact, knew that Kossuth county trunk road "B" was an arterial highway or not. Appellant, under the statute, in any event, had the right of way at the intersection. It is clear that, if appropriate signs were, in fact, maintained at the intersection, the statute requiring traffic upon local county roads to come to a stop at the intersection of an arterial highway or to proceed cautiously, if so directed by the board of supervisors, was violated by DeBruyn, and such violation would constitute negligence. Dikel v. Mathers, 213 Iowa 77, 238 N. W. 615; Willemsen v. Reedy, 215 Iowa 193, 244 N. W. 691; Hogan v. Nesbit, 216 Iowa 75, 246 N. W. 270.

DeBruyn approached the intersection from appellant's right and this fact is emphasized by appellee as determining his right of way over appellant. It is provided by section 5035 of the Code of 1931 that:

"Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way provided, however, that such vehicles coming from alleys and private drives, where view is obstructed, shall stop immediately before entering a public street or highway."

The distinction in the duties imposed upon traffic by the section last quoted and preceding sections referred to is clearly pointed out in Dikel v. Mathers, supra. In view of what is further said in

this opinion, the distinction thus established is at present immaterial.

█ If the answer of appellee be construed as admitting the classification of the two highways as alleged in the petition, then clearly, under the statute, appellant had the right of way. The court is of the opinion that such is the necessary effect of the pleading. The answer does not allege that both highways have been designated as county trunk roads, but it does specifically admit that the highway upon which appellant was proceeding was a county trunk road. While the answer does not, in specific terms, admit that the north and south highway is a local county road, yet it does in legal effect recognize a distinctive classification of county roads. There are but two. The form of the admission permits no other interpretation. We have, therefore, a collision occurring at the intersection of an arterial highway and of a local county road. The statute already quoted, in specific terms, gives traffic on the arterial highway the right of way.

█ In the absence of proof to the contrary, we must assume that the board of supervisors of Kossuth county has performed its mandatory duty as to the erection and maintenance of signs. Upon the basis of this assumption, the most favorable duty imposed upon DeBruyn would have been to proceed cautiously across the intersection. This the evidence without dispute shows he did not do. Appellant apparently had his automobile under control, but failed to observe the approach of the automobile from his right. It was, of course, his duty not only to have his automobile under control, but to operate it at a reasonable and proper rate of speed upon entering the intersection. Carlson v. Meusberger, 200 Iowa 65, 204 N. W. 432. Appellant had a right to assume that traffic approaching the intersection from the south would observe the law. Appellant was first to enter the intersection at which he had the right of way. DeBruyn gave no heed to the law but proceeded into the intersection at a heedless and reckless rate of speed. The collision occurred approximately at the center of the intersection east and west and possibly a trifle to the west thereof. At the time appellant entered the intersection, the DeBruyn car was four or five rods south thereof. The recklessness of DeBruyn does not, of course, determine the question of contributory negligence on the part of appellant, but he was apparently proceeding with his car under control at a reasonable rate of speed, conscious that he had the right of way. He may or may not have been guilty of contribu-

534

tory negligence. The court is of the opinion that he should not be held to have been guilty of contributory negligence as a matter of law. This issue should have been submitted to the jury. It was error, therefore, for the court to direct a verdict for the defendant and the judgment must be and it is reversed.—Reversed.

CLAUSSEN, C. J., and KINDIG, ANDERSON, DONEGAN, MITCHELL, and KINTZINGER, JJ., concur.