LUCILE DAVIS, Appellee, v. FRANK HOSKINSON, Appellant.

No. 45060.

March 5, 1940.

Rehearing Denied June 20, 1940.

Ed Fackler, Jr., O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellee.

Stanley & Stanley and Putnam, Putnam, Fillmore & Putnam, for appellant.

Bliss, J.—The plaintiff, a married woman 27 years old, lived at Prescott, a few miles north and east of Corning, in Adams county. She was a cosmetologist, and for a number of years had driven daily from her home to her employment in Corning. There were three different routes which she ordinarily took, depending upon the condition of the highways. One was a dirt road down and along the Nodaway river. Another was a graded highway, surfaced with gravel or crushed stone, extending west from the north boundary of Prescott until its intersection with county road X, running north and south, and then westerly into Corning. The third was a dirt road extending due west from Prescott, on the half-section lines of sections 22, 21, 20 and 19, in Prescott township, and angling southwesterly to and across county road X, then a mile west, and south into Corning. County road X was a graded highway, surfaced with crushed stone. It extended northeasterly from Corning a short distance, thence east along the south line of section 25, and thence north, through the east sides of sections 25, 24 and 13 in Quincy township. She left home for Corning, on the morning of July 25, 1938, shortly before 8 o'clock, in her 1936 two-

door Chevrolet sedan, traveling on what we have described above as the third road. This road intersects county road X, at a right angle, between sections 24 and 25. There is a jog in the dirt road as it enters and leaves county road X, that is, the center of the road as it leaves is 15 feet farther south than the center of the road as it enters the intersection. County road X, the north and south highway, at the south edge of the intersection is about 97 feet wide, between the fence lines. At this point the surfaced grade of the highway is 27 feet wide, and broadens as the roadway curves outwardly in merging into the intersection. The traveled roadway of the dirt road is 22 feet wide just east of the intersection, and about 17 feet wide just west of the intersection. As the dirt road approaches the intersection from the east, it comes up a rather steep incline—about a 13-percent grade—13 feet rise in a hundred feet. The intersection is quite level, and the view of each road fairly clear. The morning was clear and the highways dry. Both drivers were experienced and very familiar with the locality. The defendant, 37 years old, had lived since birth at his home about 900 feet south of the intersection. Plaintiff testified that she shifted to intermediate gear as her car came up the incline to the intersection. She estimated the speed of her car at 13, 14, or 15 miles an hour. When 40 feet from the intersection she looked to her right, north, up county road X and saw no one. She then looked to the south, on her left, and saw no one. Just as she entered the intersection she saw the defendant approaching from the south on her left, about 100 feet away, in distance, and about a second away, in time, for she estimated the speed of his Chevrolet sedan at from 65 to 68 miles an hour. The accuracy of her judgment in both matters is evidenced by the fact that the marks in the surfacing of the road showing the application of his brakes first appeared about 90 or 95 feet south of the point of contact, and the latter was approximately in the center of the roadway of highway X. When her car first entered the east line of the intersection, in second gear, going from 13 to 15 miles an hour, she testified that in her judgment she could have stopped it within 3 or 4 feet. Instead of stopping, she testified

that she stepped on the accelerator and attempted to speed across. Her car was angled slightly to the southwest to enter the opening into the dirt road to the west. Defendant's car swerved slightly to his left just before the collision. The right front corner of his car struck her car just to the forward of the left door. Both cars apparently remained upright. The defendant's car, a little over 30 feet to the north and east, of the place of contact, facing north, and the plaintiff's car about 45 feet to the northwest, in the ditch facing south. The place of contact was 31 feet west of the southeast fence corner of the intersection and 7½ feet north of the south fence line of the east dirt road, extended.

█  Defendant's motion for a directed verdict, and motion for new trial, and exceptions to instructions, given and refused, were all overruled. It was and is the appellant's contention that the north and south highway, upon which he was traveling, was a "county trunk" highway, and that under the record he had the right of way over the appellee at the intersection, and that the jury should have been so instructed. To establish that such was the character of this road, he offered in evidence a plat of Adams county showing the highways thereon, and memoranda showing certain highway descriptions and revisions thereof, with dates. This plat was from the office of the Iowa State Highway Commission, at Ames. The highway, in question, was retraced thereon by red markings. Attached to the plat, which was Exhibit 4, was the certificate (Exhibit 3.) of F. R. White, chief engineer and secretary of the commission, stating that he was the keeper and custodian of its records, files, books and maps in its said office. The certificate also recited that such records and maps showed that the highway, in question, (describing it), marked in red on the plat, "is now a part of the county trunk road system of Adams County and * * * has been * * * since 1914." Appellee objected that each exhibit was "incompetent, irrelevant and immaterial * * * not the best evidence, * * * too remote in time * * * and do not show the situations to be the same at the time of the accident."

On being informed that there were no stop signs at the intersection, the court said:

"Objection will be sustained because the statements of the Chief Engineer of the Highway Commission that this is a trunk highway and it could only lead to confusion to the jury unless the law has been complied with as provided by the Acts of the last session of the Legislature. In order to charge a person with a duty to stop on a trunk highway, I think the law plainly provides that the Highway Commission and Board of Supervisors must take the proper steps by the erection of stop signs. Now, that would be the holding of the Court in connection with this matter, and that is the reason why the court is sustaining objections to "3" and "4". * * * The holding of the court would be unless the stop signs were erected there was no difference in this intersection than any other intersection on ordinary country highways."

In this court counsel for appellee state that even though the reasons given by a court for its exclusion of evidence, may not be sound, yet if sound reasons exist, though not urged, and the evidence should be excluded, the ruling should not be interfered with on appeal. Counsel for appellee here urge that White, as chief engineer, was not an authorized custodian; that his certificate is not in proper form; that it merely recites conclusions; that it does not show that the plat is an original, or that it is a correct exemplification, or that it is from the office of the commission. We do not find it necessary to pass upon the soundness of counsel's objections either in this court or in the court below. For even though some of the objections may have been good, and the exhibits may have been rightly excluded, there was, nevertheless, competent evidence that the road in question was a county trunk highway. Otto Anderson, deputy sheriff, was a witness for plaintiff. On cross-examination he was shown Exhibits 1 and 2, being pictures of the dirt road, and the north and south highway, respectively. He answered: "Defendant's Exhibit '2' is the *through* road looking north, County X."

Vernon, assistant county engineer of Adams county for 3 years, and for 5 years an engineer for the highway commission, was a witness for the defendant and for the plaintiff. As a witness for the defendant, he was interrogated by defendant's attorney, thus:

"Q. Now, this road, the *County Trunk X*, on which this intersection is located that you have just described, how would you describe that County road extending from Corning north, running east and then extending north past the Hoskinson place to a place where it forms a T? A. Well, I would say it was beginning at the corporation line of Corning, * * * [correctly describing the road in question]."

The witness accepted the road's designation as a "county trunk road," and went on and described it.

Appellee urges that this is the attorney testifying rather than the witness. There is no merit in this. The question was not objected to. The witness was an engineer, who knew or should have known the facts. He was not one likely to have been misled or influenced by the form of the question.

Scott Hackett, a veteran fireman on the Burlington railroad, who lived on this highway, a mile north of the defendant, for 39 years, testified: "I live out northeast of Corning on *Primary X*." All of this testimony was without contradiction. The plaintiff offered no testimony that this highway was not a county trunk highway. Under the record the jury should have been instructed that it was that character of road, and instructed as to the rights and duties of the parties because of that fact.

I. The following statutory provisions, from chapter 134 of the Laws of the Forty-seventh General Assembly, have a bearing upon the main question involved. Section 376 of the chapter, states that "County trunk roads outside of cities and towns are hereby designated as *through* highways." (Italics ours.)

Paragraph 50, of section 1 of the chapter provides:

"Through (or thru) highway means every highway or portion thereof at the entrances to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same and when stop signs are erected as provided in this chapter or such entrances are controlled by a police officer or traffic-control signal. The term 'arterial' shall be synonymous with 'through' or 'thru' when applied to highways of this state."

Sections 348, 350 and 351, of the chapter, are as follows:

"Sec. 348. Approaching or entering intersections. The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.

"When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

"The foregoing rules are modified at through highways and otherwise as hereinafter stated in this chapter."

"Sec. 350. Entering through highways. The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute a hazard, but said driver having so yielded may proceed cautiously and with due care enter said through highway."

"Sec. 351. Entering stop intersection. The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute a hazard, but may then proceed."

Section 4644-c4 of the Iowa Code of 1935 is:

"Designation of roads. The roads which are now desig-

nated as county roads by the plans and records now on file in the office of the county auditor of each county and in the office of the state highway commission shall hereafter be known as county trunk roads. All other roads of said secondary system shall be known as local county roads.''

If this county road X was a county trunk highway, it was, because of that fact alone, under said section 376, a ''through'' highway. It was a ''through'' highway, by mandate of the legislature, just as a primary road is a ''through'' highway, under the provisions of section 375, and neither requires any further act upon the part of the highway commission, or a board of supervisors, to complete its establishment as a ''through'' highway.

Section 348 of said chapter 134 prescribes the law generally, as to who has the right of way at a highway intersection, but with the proviso that ''the foregoing rules are modified at through highways and otherwise as hereinafter stated in this chapter.'' The court instructed the jury respecting the law of right of way, only as embodied in the first two paragraphs of said section 348, and said nothing respecting the modification provision in the third paragraph. The modification with respect to ''through'' highways appears in section 350 of said chapter 134. The ''otherwise'' modification is set out in section 351 of the chapter. This latter section has no application here because it has to do only with roads that are not ''through'' highways, and only where stop signs are erected. But since there was evidence that county road X was a ''through'' highway the jury should have been so told, and should have been further instructed as to how this fact affected the rights of the parties as stated in said section 350. The appellant requested proper instructions as to both matters but the court refused them. The court based its refusal to admit Exhibits 3 and 4 in evidence, and its consequent failure to instruct as requested, solely upon the ground that there were no stop signs erected at this intersection. We find no statutory authority making the erection of stop signs an indispensable requisite to the imposition of the duty upon traffic on local county roads, to stop or

to yield the right of way at intersections of through highways, unless paragraph 50 of section 1 of said chapter 134 should require such construction. Its meaning is by no means clear.

Section 350 of the chapter provides that the driver of a vehicle shall stop at the entrance to a through highway, and said paragraph 50 defines a through highway as one at which a vehicle must stop. Such a definition does not aid much in determining the question of whether the provisions of said section 350 are effective only when there are stop signs at the intersection. The question is a troublesome one. Under section 5079-b3 of the 1935 Code, the requirement to come to a stop or to proceed cautiously at the intersection of a side road with an arterial primary highway, depended upon whether signs were placed by the highway commission. Section 5079-d3 of the same Code had the same requirement respecting arterial county trunk highways except that the matter of determining upon the placing of signs was left to the board of supervisors. Chapter 251 containing these sections and all amendments thereto were repealed by section 527 of said chapter 134, and we find no re-enactment of the provisions of those Code sections in said chapter.

It is therefore our conclusion that while the highway commission and the board of supervisors may if they desire, or the particular circumstances warrant it, also place stop signs, traffic-control devices, or officers at any intersection with a through highway, the absence of any of these does not render ineffective the provisions of said section 350 at such intersection.

II. The court submitted the following grounds of negligence:

"First: That the defendant failed to yield the right of way in said intersection after the plaintiff had first entered into said intersection.

"Second: That at and immediately prior to the time of defendant's striking the car of this plaintiff that the defendant was operating his car at such a speed and in such a manner

that he failed to have the same under control within his assured clear distance ahead.

"Third: That the defendant failed to yield the right of way to plaintiff in said intersection as plaintiff entered in said intersection from the right of the defendant."

It is very questionable whether there was any basis in the record for stating to the jury the second ground of negligence. The facts hardly brought the defendant within the provisions of the "assured clear distance ahead" statute. The trial court seemed to think the same way about it, and gave no instruction thereon, but gave the following instruction:

## "No. 12.

"As to the second ground of negligence, it is provided by the law of this state that a person operating a motor vehicle on a public highway shall have the same under control, and shall reduce the speed to a reasonable and proper rate when approaching and traversing a crossing or intersection of public highways.

"By the term 'having a car under control' is a general term applicable to different conditions and situations as shown by the evidence in different cases. Generally it may be said that a driver of a car has the car under control when he himself has the ability to guide and direct its course of movement, fix and regulate its speed, and bring it to a stop in a reasonable time.

"The law does not attempt to fix the maximum speed for automobiles on a public highway, outside of cities and towns. What would be a reasonable and proper rate of speed would depend upon the facts and circumstances and conditions at the time in question, and in determining whether or not the speed at which you find the defendant was driving as he approached said intersection was a reasonable and proper rate of speed, you should consider all the facts and circumstances shown on the trial, in regard to plaintiff's and defendant's cars as they approached said intersection; the character and nature of the intersection as disclosed by the evidence, and if you find that

the plaintiff has established, by a preponderance of the evidence, that the rate of speed at which defendant approached said intersection was greater than the speed at which an ordinarily prudent person would have driven said car in approaching said crossing, under the same or similar circumstances, then you would be justified in finding that the defendant did not reduce his speed to a reasonable and proper rate.

"You should examine all of the evidence in this case and from the evidence determine whether the defendant was guilty of operating his car without having the same under control, and whether or not he failed to reduce the speed thereof to a reasonable and proper rate as he approached said intersection, and if, from all the evidence the jury finds by a preponderance of the evidence, that said defendant was guilty of driving his car without having the same under control, or that he did not, upon approaching said intersection, reduce his speed to a reasonable and proper rate, his failure so to have the said car under control and to so reduce his speed would be negligence upon his part, and if such negligence was the proximate cause of the injury and damage to plaintiff, and you further find that plaintiff was free from contributory negligence, the defendant would be liable for such injury and damage as were caused to the plaintiff."

The appellant assigns error on this matter and states:

"That in said instruction the court submitted to the jury an issue that was not pleaded and relied upon by the plaintiff and to which the defendant had no opportunity to interpose a defense, by permitting the jury to find the defendant guilty of negligence for failure to reduce his speed to a reasonable and prudent rate when approaching an intersection, and because it is not a proper definition or application of the assured clear distance ahead statute."

We think there is merit in the complaint.

III. Appellant assigned error because of the overruling of his motion for a directed verdict, one of the grounds

of which was the failure of the appellee to show herself free from contributory negligence. It seems to us that her own testimony fully sustains the appellant's contention. As she came into the intersection of these two highways she saw him approaching a hundred feet away at a speed of 65 to 68 miles an hour. At either speed it would be but a second or a little more until he would be in her path. At that speed he could not stop his car before reaching her path. She was an experienced driver. She could not reasonably expect to clear his pathway. Her car was in second gear and traveling not to exceed 15 miles an hour. Two thirds of her car was in the east lane of highway X when it was struck. She could have stopped her car in 3 or 4 feet. Instead she attempted to accelerate it. She took a chance which a reasonably prudent person would not have taken. As this court has said, one cannot "* * * indulge in nice calculations whether he may barely escape injury, nor may he take reckless chances and be free from contributory negligence." Burnett v. Ry., 172 Iowa 704, 712, 154 N. W. 919, 922. And as said in Sohl v. R. Co., 183 Iowa 616, 622, 167 N. W. 529, 531: "The law will not permit of such experiments with danger, at another's risk." See also Parrack v. McGaffey, 217 Iowa 368, 251 N. W. 857; Hittle v. Jones, 217 Iowa 598, 250 N. W. 689; Lindloff v. Duecker, 217 Iowa 326, 251 N. W. 698.

Appellant's motion to direct a verdict for him should have been sustained. The judgment is therefore reversed.—Reversed.

SAGER, MILLER, HALE, and OLIVER, JJ., concur.

HAMILTON, C. J., dissents as to division I.