MARY M. TURBOT, as administratrix of estate of Hilton A. Turbot, deceased, appellant, v. RUSSELL S. REPP et al., appellees.

No. 48695.

(Reported in 72 N.W.2d 565)

October 18, 1955.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, and A. V. Hass, of Chariton, for appellant.

Stuart & Stuart, of Chariton, for appellees.

OLIVER, C. J.—Hilton A. Turbot was killed November 4, 1953, in a collision between an automobile operated by him and a truck loaded with crushed rock, operated by defendant Krutsinger and owned by defendant Repp. The truck was traveling in a southerly direction on Lucas County Trunk Road "N", also known as Newbern Road, a north-and-south road. Decedent was driving the automobile in an easterly direction along an undesignated road which intersects Newbern Road. As the automobile was crossing Newbern Road it was struck by the truck and Turbot was killed. Plaintiff as administratrix of his estate brought this action for damages for his death. Defendants cross-petitioned against plaintiff for their alleged damages. The jury returned a general verdict for defendants on which judgment was rendered. Plaintiff has appealed. No appeal was taken by either defendant.

I. With reference to whether decedent was negligent the court instructed the jury that the north-and-south highway (Newbern Road) at the place where the collision occurred was a through or trunk highway, and persons using the east-and-west road were required to stop and ascertain whether they could cross the north-and-south road in safety before entering thereon. Another instruction, based upon section 321.321, Code of Iowa, 1954, stated in part:

"The statute further provides that the driver of a vehicle shall stop at the entrance to a through highway and shall yield the right of way to other vehicles * * * on said through highway * * *, but said driver having so yielded may proceed cautiously, and with due care, enter said through highway."

On the question of a decedent's contributory negligence there is a well-known rule, based upon the instinct of self-preservation, that where there is no eyewitness or obtainable direct evidence as to what a decedent did or failed to do by way of

precaution during the material moments immediately before his injury, an inference arises he was in the exercise of ordinary care for his own safety. Smith v. Darling & Co., 244 Iowa 133, 140, 141, 56 N.W.2d 47, 51, and citations; Mast v. Illinois Central R. Co., 79 F. Supp. 149, 164 et seq. (Judge Graven), and citations, Affirmed 8 Cir., Iowa, 176 F.2d 157.

Appellant assigns as error the refusal of the court to give a requested instruction that if the jury find there was no surviving eyewitness who observed whether decedent did or did not stop before entering the intersection "and further find that he should have stopped, you may infer or presume that he did so stop, unaided by further proof, and, therefore, was not guilty of contributory negligence in this respect."

Decedent lived in Russell in the eastern part of Lucas County. Clem Jeffords, a witness for appellant, testified decedent had called at Jeffords' farm in the western part of the county and was driving east to Williamson, following Jeffords, who was piloting him over a short cut by a deviating route with which decedent was not familiar. It was a clear day, and the road was dry and dusty. There were no traffic signs at the Newbern Road intersection, and traffic on that road, both north and south of the intersection, was obscured by underbrush and the topography, from the view of motorists approaching on the side road.

When Jeffords arrived at the Newbern Road intersection he entered it far enough so he could see in both directions, stopped, drove across it and continued fifty or sixty feet farther east on the same side road, where he again stopped "in the middle of the dirt road * * * and watched in the rearview mirror for the Turbot car to show up so he would know which direction I went * * * I just sat and watched in the rearview mirror; it was only a short time his car started coming into view. * * * Q. When he came into view did you watch him constantly, or just from time to time? A. I just sat there and watched. Q. Did you later see him come into the intersection? A. Yes, I seen him come in the intersection. Q. And was there then a collision between his car and a truck? A. There certainly was. * * * I would say

Mr. Turbot was traveling right around maybe four, five or six miles an hour after he was in the intersection, that is, when the truck hit him. * * * Q. Now can you tell us whether or not Mr. Turbot stopped before he entered the intersection? A. I didn't see him stop. I don't recall that. I know his car was moving very slow at the time it happened there in the intersection. Q. Are you able to say whether he did stop or did not stop? A. I couldn't say whether he stopped or didn't." The witness testified, also, he did not know whether decedent stopped at the intersection. Counsel for appellees point to a sentence in a signed statement made by the witness shortly after the accident: "I believe he slowed down at the intersection but he did not stop."

To summarize the testimony of this witness for plaintiff: he was constantly watching decedent's car as it approached and was crossing the intersection and was struck. He observed that the car slowed down at the intersection before proceeding slowly across it but was uncertain whether it came to a complete stop.

Appellant contends the testimony of the witness relative to whether decedent's car came to a full stop at the entrance to the intersection made the no-eyewitness rule applicable. This contention is not well founded. His mere uncertainty as to that detail of decedent's conduct would not warrant a finding that the witness did not observe such conduct. A like question was decided contrary to appellant's contention in Sanderson v. Chicago, Milwaukee & St. Paul Ry. Co., 167 Iowa 90, 98 et seq., 149 N.W. 188, 191, where the witness testified: " 'I did not see him look to the east while he stood there. He might, or he might not. I saw him all the time. I did not see him look in that direction. I did not see him look that way. I cannot say that I did.' " Spooner v. Wisecup, 227 Iowa 768, 772, 288 N.W. 894, 897, referring with approval to the holding in Sanderson, supra, that the no-eyewitness rule was inapplicable, states: "The appellants [there] were contending for application of the 'no-eyewitness rule' on the ground that a witness who has testified that he saw the decedent all the time, could not say in which direction the decedent was looking."

There are other reasons why the refusal to give an instruction such as the one here requested was not error. It was

not a general instruction on the no-eyewitness rule but a special instruction which would have overemphasized one detail in the case. Moreover, the statute, Code section 321.321 requires more than the *stop*. It provides the driver shall *stop* and *yield* the right of way and that having so yielded he may proceed cautiously and with due care enter the through highway.

The requirement that drivers on the side road *stop* and *yield* gives traffic on the through highway the right of way. As pointed out by the distinguished trial court, the duty to stop and the duty to yield are compound duties. The requested instruction would have separated them and improperly applied the no-eyewitness rule to a portion of such duties only. Its refusal was correct.

II. Several assignments of error involve the questions of right of way and the absence of stop signs at the intersection. Appellant contends decedent's automobile had the directional right of way under section 321.319, Code of 1954. The trial court overruled appellant's contention this statute was applicable and, as already noted, instructed the jury the north-and-south road was a through highway and the statute (section 321.321) required those using the east-and-west road to stop and yield the right of way, etc.

This followed Davis v. Hoskinson, 228 Iowa 193, 201, 290 N.W. 497, 501, in which this court considered the statutes and stated, through Judge Bliss: "It is therefore our conclusion that while the highway commission and the board of supervisors may if they desire, or the particular circumstances warrant it, also place stop signs, traffic-control devices, or officers at any intersection with a through highway, the absence of any of these does not render ineffective the provisions of said section 350 [of Ch. 134, 47th G. A., now section 321.321, Code of 1954] at such intersection."

Appellant asks the court to reconsider this proposition and to overrule the Davis case.

Code section 321.319 provides where two vehicles are approaching so their paths will intersect, the vehicle approaching the other from the right shall have the right of way, but provides also: "The foregoing rule is modified at through highways

and otherwise as hereinafter stated in this chapter."

Code section 309.4 states: "The roads which are now designated as county roads by the plans and records now on file in the office of the county auditor of each county and in the office of the state highway commission shall hereafter be known as county trunk roads. All other roads in said secondary system shall be known as local county roads."

Although not here important, it may be noted that sections 306.1 and 306.2 state the secondary road system is subdivided into farm-to-market roads and local secondary roads.

Section 321.351 states: "County trunk roads outside of cities and towns are hereby designated as through highways."

The record shows Lucas County Trunk Road "N" is, and for many years has been, designated as a through highway.

Section 321.321 provides: "The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way * * *."

Section 321.322 provides: "The driver of a vehicle shall likewise stop in obedience to a stop sign * * * at an intersection * * * although not a part of a through highway * * * yielding * * *."

These two sections require a driver to stop and yield:

(1) At the entrance to a through highway, and (2) in obedience to a stop sign although not a part of a through highway. If, as appellant contends, a driver is not required to stop and yield except in obedience to a stop sign, section 321.321 would be meaningless and without effect so that it could be omitted and section 321.322 would fully express the intent of the legislature. Such construction would not be reasonable. These two statutes, considered together, state in so many words that the driver shall stop and yield at the entrance to a through highway and *likewise* in obedience to a stop sign at an entrance although not a part of a through highway. The meaning of this language cannot be open to serious doubt.

Appellant relies largely upon a definition in subdivision 53 of Code section 321.1: " 'Through (or thru) highway' means every highway or portion thereof at the entrances to which vehic

ular traffic from intersecting highways is required by law to stop before entering or crossing the same and when stop signs are erected as provided in this chapter or such entrances are controlled by a police officer or traffic-control signal."

Appellant would construe this to mean a county trunk road is not a through highway unless stop signs are erected or such entrances are controlled by a police officer or traffic-control signal.

That construction would eliminate the word "and" from subdivision 53. However, if the subdivision is considered as written by the legislature with all its words included, it may be construed to define a through highway as one where a stop is required: (1) By law (section 321.321) and (2) by a stop sign when erected, etc. (section 321.322).

Code section 321.345 authorizes the designation of these "stop sign" through highways and intersections and the erection of stop signs. It states in part: "The state highway commission with reference to primary highways, and local authorities with reference to other highways under their jurisdiction may designate through highways and erect stop signs at specified entrances thereto or may designate any intersection as a stop intersection and erect like signs at one or more entrances to such intersection."

See also section 321.236(6).

Section 321.255 provides: "Local authorities in their respective jurisdiction shall place and maintain such traffic-control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter * * *."

Our attention has not been directed to any present statute which requires the placing of stop signs at the intersections of county trunk roads outside of cities and towns, which are designated by statute as through highways. (See section 321.351.) This is not because the legislature has been unable to express itself. Section 5079-d4, Code of 1931 (Sec. 4, Ch. 121, 44th G. A.) provided: "The county board of supervisors shall furnish, erect and maintain suitable standard metal signs on side roads or streets directing traffic thereon which is approaching

a county trunk road to stop * * *. Traffic on such roads shall comply with such signs."

Arends v. DeBruyn, 217 Iowa 529, 252 N.W. 249, factually similar to the case at bar, considers the statutes then in operation, and refers to the mandatory duty of the board of supervisors to erect and maintain signs. That statute requiring the board to erect and maintain stop signs for traffic approaching county trunk roads was in effect for six years. In 1937 it was repealed by chapter 134, Acts of Forty-seventh General Assembly. Since then the erection of stop signs by the board at the intersections of county trunk roads has not been mandatory.

The court is aware that laws requiring a motorist at his peril, to know that traffic, on certain rural roads which are without visible warning signs, has a preference over traffic on intersecting roads will, at times, result in hardship. However, changes in such laws, if any, are for the determination and action of legislative bodies, rather than courts.

Davis v. Hoskinson, supra, which we are asked to overrule, was decided in 1940. Various legislatures since then must have been aware of that decision. However, none has seen fit to reenact the repealed statute, or adopt a similar one, requiring the board to erect stop signs at county trunk intersections.

The foregoing considerations require the conclusion the construction of the statutes in Davis v. Hoskinson accords with the intent of the legislature expressed in such statutes. Therefore, that division of the Davis case is reaffirmed. It follows the trial court did not err in instructing the jury that the absence of stop signs would not relieve decedent from the duty to comply with the provisions of section 321.321, and in giving and refusing other instructions involving that circumstance.

III. Error is predicated upon the refusal of the trial court to submit to the jury her contention that the undesignated east-and-west road upon which decedent was traveling was a county trunk road and was of equal classification with County Trunk Road "N". Appellant relies upon section 5, chapter 20, Acts of Forty-third General Assembly, 1929, now section 309.4, Code of 1954, which states: "The roads which are now designated as county roads by the plans and records now on file in the

office of the county auditor of each county and in the office of the state highway commission shall hereafter be known as county trunk roads. All other roads of said secondary system shall be known as local county roads."

No error appears here. The official records show the east-and-west road was never designated as a county road by the plans and records on file in the office of the county auditor and in the office of the state highway commission.

IV. Over objections by appellant that the witness was incompetent under the dead man statute, section 622.4, the court permitted defendant Krutsinger to testify concerning his own actions and what he observed of the actions of decedent and decedent's automobile. Error is assigned to these orders.

It has been said the decisions are in irreconcilable conflict as to the construction to be given dead man statutes. 58 Am. Jur., Witnesses, section 216.

The rule in Iowa is thus stated in Carlson v. Bankers Trust Co., 242 Iowa 1207, 1213, 1214, 50 N.W.2d 1, 5: "We are committed to the view section 622.4 is not to be enlarged by construction and those whom the statute designates incompetent will be held so only as to the particular kind of testimony clearly forbidden by the statute [citing authorities]."

In re Estate of La Grange, 191 Iowa 129, 132, 181 N.W. 807, 808, quotes: "'Our decisions have gone to the extreme limit of liberality in this respect, but the rule of the cited cases has been so long and so frequently followed, it must be regarded the settled policy of our law, until changed by legislative enactment.'"

In re Estate of Talty, 232 Iowa 280, 282, 5 N.W.2d 584, 585, 144 A.L.R. 859, held the witness was not incompetent because the questions called solely for the appearance and actions of decedent ascertained merely by observation, and not for anything the witness had done for decedent.

Although there is authority to the contrary in a number of jurisdictions we are unwilling to depart from the established rule of this court that the statute will not be enlarged by construction. Hence, we conclude the overruling of appellant's ob-

jections to the competency of the witness was not error.—Affirmed.

All JUSTICES concur.