**Ralph WILSON, Appellee,**

v.

**JEFFERSON TRANSPORTATION CO. and Oran H. Bunce, Appellants.**

**No. 53104.**

Supreme Court of Iowa.

Dec. 10, 1968.

Jones, Hoffman & Davison, Des Moines, for appellants.

Don J. Wilson, West Des Moines, for appellee.

BECKER, Justice.

This action grows out of a collision at the intersection of Bird Street and Second Avenue, north of Interstate 80 in Polk County on July 15, 1965 about 5:20 P.M. Plaintiff Wilson was driving north on Second Avenue, a four-lane divided street. He collided with defendants' bus which had come through the Bird Street intersection and was athwart Second Avenue. Plaintiff alleged failure to yield the right of way, failure to keep a proper lookout, failure to obey traffic control signs and failure to have the bus under control. The jury returned a verdict for plaintiff in the sum of $25,000.00. Defendants appeal citing jury instructions and excessive damages as reversible error.

The nature of the intersection is quickly and accurately illustrated by plaintiff's exhibit 3 reproduced herewith. The top of the picture is south.

Defendants' bus came off the overpassing superhighway on the ramp shown at the right center of the picture and approached underpassing Second Avenue on the inferior, stop-sign controlled street.

Plaintiff was proceeding north on Second Avenue. He saw the bus coming down off Interstate 80 on Bird Street: " * * * I kept driving. I—it never dawned on me that the bus would pull out there and wouldn't stop. * * * Q. Well, did you notice whether or not it stopped, or did it slow down, or what did it do? A. I really didn't notice. I just assumed he didn't stop, because he just rolled right out in front of me." On cross-examination, plaintiff said he could not swear as to whether the bus did or did not stop.

Defendant bus driver testified he stopped behind another car at the stop sign in question. The car pulled out. He pulled his bus up to Second Avenue and stopped again. A northbound car on Second Avenue turned left into the median to cross the west (southbound lanes) and stopped for traffic. This forced defendant to stop with the front part of his bus in the median area. Since the bus is 40 feet long and the northbound slab 20 to 22 feet wide the truck blocked the entire traveled way.

On rebuttal George Ballard testified he took the same route as the bus. He stopped at the stop sign, crossed the east lanes of Second Avenue and turned left or south on Second. As soon as he turned he heard brakes screeching. He looked around and saw the car sliding. It hit the bus at the left rear duals. The bus was still moving when struck.

The patrol officer's testimony established point of impact at one foot, one inch west of the east edge of the north bound lane of Second Avenue. Plaintiff's car had laid down 71 feet of skid marks.

■ I. Defendants' first assignment of error is there was insufficient evidence to justify submission of plaintiff's allegation that defendant negligently failed to obey a traffic control sign. They first reason that the specification is nonstatutory, i. e., dependent on common law, because plaintiff did not plead the statute. Since rule 94, Rules of Civil Procedure was changed in 1963 by deleting the sentence, "But a pleading asserting any statute, or a right derived therefrom, shall refer to such statute by plain designation," it is not necessary to plead the statutes upon which the pleader relies. State ex rel. LeBuhn v. White, 257 Iowa 606, 608, 133 N.W.2d 903.

■ The comment on this amendment to rule 94 found in the pocket part to Cook, Iowa Rules of Civil Procedure, Volume I, states: "This change is to assure judicial notice of Iowa statutes without reference thereto in the pleadings." If the evidence justifies submission of the charge under the statute, the specification was properly submitted as a statutory violation.

II. Defendants argue the record taken as a whole and viewed most favorably to plaintiff reveals no substantial evidence that the bus failed to obey a traffic control signal.

We said in Turbot v. Repp, 247 Iowa 69, 74, 72 N.W.2d 565, 568: "The requirement that drivers on the side road *stop* and *yield* gives traffic on the through highway the right of way. As pointed out by the distinguished trial court, the duty to stop and the duty to yield are compound duties. The requested instruction would have separated them and improperly applied the no eyewitness rule to a portion of such duties only. Its refusal was correct." See also Hittle v. Jones, 217 Iowa 598, 250 N.W. 689 and sections 321.321, 321.322, Iowa Code (1966).

■ Defendant attacks the foregoing authorities on the ground Turbot v. Repp, supra, only decided that the no eyewitness rule applied to neither facet of the statute in question. We think the above quoted paragraph was necessary to the issue decided and therefore not obiter dicta. In any event both sections 321.321 and 321.322

require the motorist to stop and, having stopped to yield to motorists on the favored highway. A careful reading of the statutes indicate the disjunctive "or" is used only to distinguish between situations where yield signs are used in contradistinction to stop signs. The statutes as a whole require the compound duties noted above.

■ We find substantial evidence to justify a jury finding that either or both facets of defendants' duties were violated. Plaintiff's testimony, taken as a whole, permits the conclusion he first saw the bus at a distance of about 200 feet. If consideration is given to the relative distances of the vehicles, their length and all other material evidence, the jury might well find the bus did not have time to come to a full stop (or make two full stops as defendant driver testified) after plaintiff first saw it and also pull out to its position at point of impact.

We think there was sufficient evidence to justify the court's submission of the issue of failure to obey a traffic control signal as negligence.

■ III. Defendant also complains of the court's failure to instruct on speed in the manner requested. The court gave the standard instruction on speed, predicated on Iowa Code, 1966, section 321.285 which tells the jury that a motorist shall drive at a careful rate of speed having due regard for all conditions then existing. Defendants requested an instruction under section 321.-288 which would have told the jury that a motorist shall reduce speed when approaching or traversing an intersection unless he is already driving at a reasonable and proper rate of speed. The requested instruction sets forth the appropriate rule more fully than the shortened allusion here used and is correct as requested. The trial court apparently did not feel it was required in this case. We agree.

■ The section 321.288 statutory duty to reduce speed at intersections is in addition to the general rule set forth in section 321.285 that all motorists must drive at a reasonable and proper rate under the circumstances then existing. The court properly instructed on the latter facet of the case. The additional duty to slow down at intersections is ordinarily not applicable to motorists on through highways where intersecting traffic has the duty to stop and yield. The general considerations are stated in Paulsen v. Haker, 250 Iowa 532, 95 N.W.2d 47, 51–52:

"The true rule is that the statutory right of way is not a guarantee of safety, but that the driver on the protected road must use reasonable care under the existing circumstances for his own safety and that of others. Likewise, in connection with the duty to keep a proper lookout, we think it is his duty to make reasonable observation of all surrounding circumstances, including intersections and other traffic which may be in fair view on intersecting roads, and to use such care as an ordinarily prudent man would do in the light of everything disclosed by such observations."

Paulsen v. Haker, supra, considers the situation where the motorist knows, or should know, the car on the inferior road is not going to afford the right of way. He must exercise reasonable care under such circumstances. The negligence of a driver on the favored road in such circumstances involves lookout, control and speed. But the speed concepts are controlled by the situation developed after the favored driver knows, or should know, the inferior driver is not going to obey the law.

The duty of a motorist to slow down, as he approaches an intersection, while on a favored highway has been considered by the Michigan Supreme Court in Noyce v. Ross, 360 Mich. 668, 104 N.W.2d 736: "Arterial highways and superhighways are designed for the purpose of moving automobile traffic at high rates of speed. This subject has been discussed in McGuire v. Rabaut, 354 Mich. 230, 92 N.W.2d 299."

The McGuire case considers the matter more fully, 92 N.W.2d at p. 303: "We have seen that the favored driver is not required to have his car under such control that he may bring it to a stop at each intersection he approaches upon the theory that some reckless, or semiconscious, or suicidal subordinate driver will dispute his passage. This would bring traffic on arterial highways, for all practical purposes, to a complete stop. At each successive intersection the arterial driver would have to slow down to a few miles per hour, and at blind corners he would be required literally to nudge his car forward into the intersection, until he crossed the threshold of vision for the subordinate street, lest he not be able to stop instantly should danger threaten. But the purpose of the through highway is to move great volumes of traffic at relatively high speeds. Such purpose cannot be accomplished if our application of the standard of due care does not take into account the unique function of the arterial highway. Thus it was that we said in Arnold v. Krug, 279 Mich. 702, 707, 273 N.W. 322, 324, that, 'The right of way accorded to a driver upon a trunk line highway is something more than the privilege of going through the intersection in advance of a car which reaches it at the same time.' "

The instruction requested by defendant is given in intersection cases where neither through highways nor stop signs are involved. We have never held it essential to instruct under section 321.288 in relation to the duty of a driver on the favored right of way. Blashfield, Automobile Law and Practice, section 114.93, pp. 201–02, states in part: "Ordinarily the motorist having the right of way is not negligent in failing to slow down or stop at an intersection, even if traffic is observed approaching from the inferior street. Moreover, a motorist on a favored road is not required to drive so that he can make a full stop at each intersection, and he is only required to proceed with such care and with his automobile under such control as existing conditions, known or which should be known to him, may require."

■ Put differently, through highways are designed to carry relatively rapid traffic flowing evenly along their courses. Cross traffic is controlled by stop signs or yield signs, as the case may be. Until it becomes apparent the rules are violated, the favored driver may continue at a speed that would be reasonable elsewhere on the favored highway.

The court instructed in part: "The speed with which one may drive a motor vehicle is governed by the character of the place where it is being driven at the time, the manner and extent of the use of the highway by others at the time and place, and the danger reasonably to be apprehended to others by driving at such rate of speed."

The court was correct in not instructing in connection with any additional duty to reduce speed at intersection.

■ IV. Defendant also complains of the court's failure to instruct the jury that road conditions may require a speed less than the statutory limit; traffic regulations call for a minimum of care not maximum; and a motorist should not travel up to the statutory speed limit if ordinary care and prudence require a lesser speed. The requested instruction was in form recommended by the Iowa Uniform Instructions, No. 2.19 and is a correct statement of the law. Richards v. Begenstos, 237 Iowa 398, 21 N.W.2d 23. The difficulty lies in total absence of conditions giving rise to the applicability of such an instruction. There is no evidence of adverse weather conditions as appeared in the last cited case. Nor was there any evidence of unusually heavy traffic or any other circumstances to make the instruction necessary or advisable. Instructions stating correct abstract principles need not be given unless related to the facts of the case.

This complaint was not made the subject of an assignment of error but was thrown in as part of the argument covered by our Division III. The record was properly made at trial. We have therefore preferred to treat the matter on its merits rather than deem it waived. Rule 344(a)(4) (Third), R.C.P.

■ V. Defendants' last assigned errors involve the damage question. They argue first that the decision to provide plaintiff with a full set of dentures was an optional matter and they should not be charged with such an element of damage as a proximate result of the accident. The normal complement of teeth number twenty-eight. At the time of the accident eleven had previously been removed and plaintiff had pyorrhea. The accident accounted for loss of three more. The jury could find from the testimony that the decision to pull the rest of the teeth was reasonable and was the proximate result of the accident.

The dentist testified, "Dollar for dollar I would question whether partial (denture) in this mouth would have lasted three to five years."

■ VI. Defendants argue there was no evidence of permanent injury and the award was excessive. As to the first matter, plaintiff, age 40, lost several teeth, ended with the rest being pulled, a full denture and has a fractured jaw which he testified, "Sometimes my jaw aches with a dull throb if there is a change in the weather. It does not interfere too much with the opening and closing of my mouth." The issue of permanent injury was properly submitted. Mabrier v. A. M. Servicing Corp., Iowa, 161 N.W.2d 180, 183 and cited cases.

■ VII. Plaintiff's injuries may be summarized as follows: His ribs were bruised but not broken. They bothered him about a month. He had a deep five inch laceration to the bone on his chin and face which had to be sutured. This left a slight scar on the left side extending from the chin three or four inches. Lacerations on the lower lip, tongue and inside the mouth also required sutures. His broken jaw was wired shut under general anesthesia. His mouth remained wired for over 15 weeks during which time he was on a liquid diet consisting of malted milk, baby food, and the like. He weighed 180 pounds when injured and 145 pounds when the wires were taken out of his mouth. He was in the hospital five or six days and later for three days when the rest of his teeth were pulled. Plaintiff testified his teeth were in good condition prior to the accident. The dentist's testimony, taken as a whole, would indicate plaintiff's teeth were not in good condition but were not unusual. Plaintiff was off work two months and worked about a month with his mouth wired shut. At this time he was very weak and could hardly climb in and out of his bakery truck. As a driver-salesman for Colonial Baking Company, he had been making $171.69 per week. His life expectancy was stipulated at 32.8 years according to the Commissioner's Standard Ordinary Table of 1958.

The car damage claim was limited to $100. The other special damages submitted by the court were: "Taylor Dental Laboratory in the sum of $200.00; ambulance, $12.00; Broadlawns Hospital, $35.00; medications, $27.74; and Dr. Margules, $75.00; or the fair and reasonable value of services, but not exceeding for each item the amount claimed therefor, such as for Dr. Edwards, $607.00; anesthesis, $160.00; and Lutheran Hospital, $479.60 and loss of earnings at $1,373.52."

Defendants do not argue the verdict here was the result of passion, prejudice or undue influence. They rely entirely on Mazur v. Grantham, 255 Iowa 1292, 1303, 125 N.W.2d 807, 813–814, which is quoted in the special concurrence of seven members of

this court in Allen v. Lindeman, 259 Iowa 1384, 148 N.W.2d 610, 620:

"In considering the size of verdicts we have repeatedly referred to passion and prejudice, shock the conscience, failure to administer substantial justice, the rule of fair compensation, and lack of support in the evidence. See Engman v. City of Des Moines, 255 Iowa 1039, 125 N.W.2d 235; Rauch v. American Radiator & Standard Sanitary Corp., 252 Iowa 1, 104 N.W.2d 607; Ferris v. Riley, 251 Iowa 400, 101 N. W.2d 176; Hamdorf v. Corrie, 251 Iowa 896, 101 N.W.2d 836; Stevenson v. Abbott, 251 Iowa 110, 99 N.W.2d 429; and Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 82 N.W.2d 82. See also 48 Iowa Law Review, pp. 649–665. It seems fundamental the most important of these is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they may all arise. The real question in most cases and here is the amount and sufficiency of evidence to support the award made."

The foregoing quotation omits the concluding sentence of the paragraph, "Certainly where the verdict is within a reasonable range as indicated by the evidence the courts should not interfere with what is primarily a jury question." In Mazur v. Grantham, supra, we reversed the trial court's action ordering a remittitur and directed reinstatement of the verdict.

The rule set forth in Mazur v. Grantham, supra, is firmly established. The difficulty arises in its application. To quote the same case once more, loc. cit. 255 Iowa 1304, 125 N.W.2d loc. cit. 814: "There is support in the evidence for a substantial award. The verdict is within the fair range of the testimony. For us to interfere merely substitutes our judgment for that of the jury, this should be done with extreme caution."

We hold the verdict is sufficiently supported by the evidence to preclude interference by this court.

Affirmed.

All Justices concur except GARFIELD, C. J., and LARSON and SNELL, JJ., who dissent.

GARFIELD, Chief Justice.

I concur except as to Division VII and the affirmance. I think the amount of the verdict lacks substantial support in the evidence and is excessive. I would require a remittitur as a condition of affirmance.

LARSON and SNELL, JJ., join in this dissent.